747 F.2d 253
 JAFFE-SPINDLER COMPANY and Benjamin D. Jaffe, as general
partner, Appellants,
v.
GENESCO, INC., Appellee,
and
Monumental Life Insurance Company, Appellee,
and
I.R.E. Realty Advisors, Inc., the General Partner of and
d/b/a Investors Tax Sheltered Real Estate, Ltd.,
Series II, A Florida Limited
Partnership, Defendants.
In re GENESCO, Inc.,
v.
MONUMENTAL LIFE INSURANCE CO., et al.
and
In re JAFFE-SPINDLER COMPANY,
v.
GENESCO, INC.
 No. 83-1742.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1984.
Decided Oct. 30, 1984.
 
 Robert S. Moraff, Totowa, N.J. (Fiorello, Moraff & Foster, P.A., Totowa, N.J., James C. McLeod, Jr., Willcox, Hardee, McLeod, Buyck & Baker, Florence, S.C., on brief), for appellants.
 Paul A. Alexis (Vincent A. Cunningham, Nashville, Tenn.; William C. Stork, Barnes, Alford, Stork & Johnson, Columbia, S.C., on brief), for appellee Genesco Inc.
 Robert W. Dibble, Jr., Columbia, S.C. (Robert E. Stepp, McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, P.A., Columbia, S.C., on brief), for appellee Monumental Life Insurance Company.
 Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 In a diversity case,[1] Jaffe-Spindler Co. appeals from an order of the United States District Court for the District of South Carolina, 577 F.Supp. 72.
 
 
 2
 By an order of March 31, 1982, consented to by all of the parties before the court, the district judge consolidated various actions. The case, as consolidated, could best be described as an action for rent due brought by J-S, the landlord, met by a defense and counterclaim of constructive eviction by Genesco, the tenant, and a counterclaim for waste against J-S by Monumental Life Insurance Co., J-S's mortgagee.
 
 
 3
 Genesco entered into a twenty-five year lease, commencing on August 12, 1970, with J-S's predecessor-in-interest. The lease was for a store in a strip shopping center. J-S's predecessor-in-interest agreed that:
 
 
 4
 The Lessor shall, at its own expense keep and maintain the entire building and basement, if any, watertight at all times.
 
 
 5
 Almost from the beginning of Genesco's tenancy the roof of the store leaked. J-S's predecessor-in-interest and J-S attempted to no avail to fix the roof.
 
 
 6
 On December 31, 1980, Genesco closed the store, part of the S.H. Kress chain, for reasons unrelated to the leaking roof. Genesco attempted to sublet the store without success. The district court found that Genesco had been unable beneficially to use on its:
 
 
 7
 own behalf or to sublet the premises as a result of Jaffe-Spindler's failure to repair the roof. The roof problems were acute and it was a major factor in the inability of Genesco to sublet the premises.
 
 
 8
 The district court concluded that Genesco was constructively evicted as of September 30, 1981, at which date the lease was held to have terminated. Genesco was relieved of the responsibility to pay rent from that date, and was awarded $120,309.00 for rent paid to J-S for periods from and after September 30, 1981.
 
 
 9
 If not the only problem, by far the most serious one had been the development in the roof of a large crack. The district court found that it would have cost $199,828.00 to restore the store to its state before the leak developed. The district court concluded that the South Carolina Supreme Court would allow an action for waste before foreclosure and that Monumental, the mortgagee, accordingly was entitled to a judgment for waste. The district court found that, absent the September 30, 1981 termination, the value of the lost lease would have been $442,317.00. It further found that the loss of the lease, coupled with the physical damage to the premises, impaired the value of Monumental's security by $642,145.00. The value of the mortgage held by Monumental being the lesser sum of $449,115.57, the district court awarded Monumental a judgment in that amount, plus interest from June 1, 1983 to the entry of judgment at the rate of $107.60 per day.
 
 
 10
 The appellants claim that Genesco was not justified in claiming that it had been constructively evicted. The district court found that, because of the roof's condition, Genesco could not use or lease the store. The district court also found that the condition was caused by the landlord's failure to fix the roof. Genesco was, in fact, no longer using or able to use the premises.[2] Competent findings demonstrate the presence of the elements necessary to show constructive eviction. Thus, the district court order based on a finding of constructive eviction is without error.
 
 
 11
 J-S also claims that a suit for waste is altogether barred by a provision in the mortgage that states that the mortgagor shall not be liable to the mortgagee "on the indebtedness secured hereby or upon any of the other terms, covenants or conditions of this instrument." Because waste is a tort, the provision in the agreement is inapplicable. The security is not the indebtedness itself, and the right to a recovery for waste arises simply from the existence of the mortgage relationship and independently of "the other terms, covenants and conditions" of the particular mortgage document.
 
 
 12
 J-S has raised two further objections to the district court's award of damages for waste to Monumental, the mortgagee. First it has argued that the mortgagee should only be awarded a judgment for waste when the collateral's value has diminished to the point at which it no longer equals or exceeds the outstanding indebtedness. Second, it asserts that a judgment for waste could not be obtained until after foreclosure.
 
 
 13
 Waste is "the destruction, misuse, alteration or neglect of premises by one lawfully in possession thereof, to the prejudice of the estate or interest therein of another." 78 Am.Jur.2d Waste Sec. 1 (1975). A person who has a specific lien against real estate has a right to restrain waste by the owner of the real estate. 78 Am.Jur.2d Waste Sec. 13 (1975).[3] The collateral for Monumental's loan to J-S was the premises in intact condition. Because of the unrepaired leak in the roof, the condition, and value, of the premises diminished greatly to the mortgagee's detriment.
 
 
 14
 Under South Carolina law a mortgagee is deemed to have only a lien on real property as opposed to actual title. See S.C.Code Ann. Sec. 29-3-10 (Law.Co-op.1977). Lien states, generally, only allow a mortgagee to recover for waste if the value of the collateral goes below the amount of the outstanding indebtedness. See Schalk v. Kingsley, 42 N.J.Law 32 (1879). Title states, on the other hand, allow a mortgagee to recover for any diminution in the value of security given for a debt. See Delano v. Smith, 206 Mass. 365, 92 N.E. 500 (1910). The differing results come because any diminution in value injures the mortgagee's property in a title state. In a lien state, the mortgagee has no property interest which can be injured. See 3 R. Powell, The Law of Real Property paragraphs 439, 454 (1981). Yet here we deal not with diminution due to market shifts but with physical deterioration which J-S had a duty to prevent. See 5 R. Powell, supra, Sec. 640. We note that South Carolina law is not yet settled on the point of whether, in such circumstances, the reduction in value of the security becomes recoverable as waste although the value still may not have dropped below the amount of the mortgage lien.[4] Neither lien state courts nor title state courts have followed a consistent "party line" in all mortgage cases. See Sturges & Clark, Legal Theory and Real Property Mortgages, 37 Yale L.J. 713-15 (1928). Furthermore, "[m]ost of the basic principles governing the real property mortgagee's remedies for waste were worked out in the 19th Century." Leipziger, The Mortgagee's Remedies for Waste, 64 Calif.L.Rev. 1086, 1087 (1976). Thus, the generality that South Carolina is a lien state does not decide the issue of damages in the present case.
 
 
 15
 We believe that, given the special facts of the present case, the district court was correct in assuming that the South Carolina Supreme Court would apply the rule which usually governs in title states.[5] J-S's mortgage was in default as of August 1, 1982, and, as a consequence, Monumental acquired a right of possession, exercisable by foreclosure, equivalent to title. Also, because the mortgagee in the present case was restricted in its security solely to the value of the collateral (i.e., it had no recourse against J-S or its partners, general or limited), any diminution of the value of the premises greatly prejudiced Monumental's security interest.[6]
 
 
 16
 J-S's argument that Monumental could not sue for waste simply because it had not foreclosed, although it was entitled to do so, is without merit. The loan from Monumental to J-S was in default when the present action was begun and foreclosure was available to Monumental. Foreclosure proceedings could have been instituted at any time. Since the courts should not require the performance of acts when the doing of them will not further any worthwhile purpose, we rule, on the facts of the present case, that there was the essential equivalent of foreclosure.[7]
 
 
 17
 Accordingly, we affirm the findings and rulings of the district court.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The papers, as they came before us on appeal, disclosed a possible jurisdictional defect. Jaffe-Spindler Co., the plaintiff, was a limited partnership organized under New York law. Benjamin D. Jaffe, the general partner, was a citizen of Florida. Genesco, the primary defendant, was a Tennessee corporation with its principal place of business in Tennessee. Monumental, a co-defendant, was a Maryland corporation with its principal place of business in Maryland. J-S, in its complaint, cleared up one point bearing on whether there was diversity jurisdiction by an uncontradicted allegation that none of its limited partners was a citizen of Tennessee. However, there is no mention in the record or briefs as to whether any J-S limited partner was or was not a citizen of Maryland
 The omission may well constitute a failure by J-S to satisfy its burden to establish jurisdiction. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) (complete diversity required); see also Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900) (citizenship of limited partners must be considered in determining complete diversity); but see Missouri-Indiana Investment Group v. Shaw, 699 F.2d 952, 957 n. 6 (8th Cir.1983) (Supreme Court has not decided whether diversity is defeated by an identity of citizenship between a party and a limited partner in an opposing limited partnership managed entirely by one or more general partners).
 However, having heretofore never having had occasion to address the issue of whether a limited partner's citizenship is relevant when the general partner is diverse, we need not do so now. Compare Colonial Realty Corp. v. Bache & Co., 358 F.2d 178, 183-84 (2d Cir.1966) (limited partners' citizenship is irrelevant) with Elston Investment, Ltd. v. David Altman Leasing Corp., 731 F.2d 436 (7th Cir.1984); and Carlsberg Resources Corp. v. Cambria Savings and Loan Ass'n, 554 F.2d 1254 (3d Cir.1977) (limited partners' citizenship is relevant). At oral argument, we asked counsel for J-S whether any of J-S's limited partners was a citizen of Maryland. Counsel stated that none were. All counsel for the opposing parties agreed. Accordingly, we have before us merely a defective allegation of jurisdiction which can be, and hereby is, amended by interlineation in the Complaint of an allegation that no J-S limited partner was a Maryland citizen. See 28 U.S.C. Sec. 1653.
 
 
 [2]
 Constructive eviction is defined as:
 a) an intentional act or omission by the landlord
 b) depriving the tenant of possession or beneficial use of the leasehold; together with
 c) abandonment by the tenant within a reasonable time.
 See Thomas v. Hancock, 271 S.C. 273, 275, 246 S.E.2d 604, 605 (1978).
 Genesco closed its store for reasons unrelated to the leak. Yet, it cannot use the store and can derive no benefit from it. We interpret the requirement that, for constructive eviction to exist, abandonment must have occurred to mean that a party cannot assert constructive eviction when he, she or it is still using or deriving benefit from the leasehold. See Thomas v. Hancock, supra. Thus "abandonment" concerns actual total lack of utility rather than technicalities over whether formal steps relating to status have been taken. The store had, for present purposes, been abandoned by Genesco.
 
 
 [3]
 J-S and its predecessor in title were subject to the continuing responsibility to keep the building watertight when J-S's predecessor gave Genesco a right, as tenant, to possess the premises through the lease of August 12, 1970. To the limited extent of that responsibility, at least, J-S qualified, vis-a-vis the mortgagee, as a person in possession
 
 
 [4]
 Some concern has been expressed as a consequence of language in Heath v. Haile, 45 S.C. 642, 24 S.E. 300 (1895) to the effect that the mortgagee may recover, in a waste action, an amount not in excess of "the balance due on the mortgage debt after exhausting the mortgaged premises remaining." Heath arose in a factual context where (a) the foreclosure had been judicially approved and the date of the foreclosure sale set before the waste occurred and (b) the amount recoverable for waste beyond peradventure was less than the balance due on the mortgaged debt. Heath, therefore, is to be read merely as emphasizing the principle, fully adhered to here, that, in a lien state such as South Carolina, the combined recovery for waste and by foreclosure (or other means) cannot exceed the amount of the mortgage indebtedness. Heath does not purport to hold that foreclosure and sale of all security pledged under the mortgage is a condition precedent to an action for waste
 Any payment in satisfaction of the judgment for waste will be applied as a credit in reduction of the mortgage debt and the aggregate recovery through the judgment for waste, through foreclosure or otherwise is limited to the amount of the mortgage debt remaining due. See W. & R. Inv. Co. v. Edwards Supply Co., 304 Mass. 650, 24 N.E.2d 518 (1939). Hence the possibility of a double recovery is precluded, since the mortgage indebtedness constitutes a cap on recovery, whether by waste, by foreclosure, or by a combination of the two.
 
 
 [5]
 This being a diversity case, the district judge's opinion as to uncertain state law should be accorded substantial deference. See Caspary v. Louisiana Land and Exploration Co., 707 F.2d 785, 788 n. 5 (4th Cir.1983)
 
 
 [6]
 Because collateral whose value has been diminished through fault attributable to the mortgagor may still be worth something in excess of the outstanding indebtedness one day does not mean that the collateral will suffice on a later, rainy day. The margin of safety will have been significantly reduced
 
 
 [7]
 It is "a principle of equity that the court does not require unnecessary formalities to be gone through." Sprange v. Lee [1908] 1 Ch. 424, 430. Although waste and actions based on mortgages were traditionally actions at law, the lien theory of mortgages, a theory to which South Carolina subscribes, is borrowed from and based upon the doctrines of equity. Durfee, The Lien or Equitable Theory of the Mortgage--Some Generalizations, 10 Mich.L.Rev. 587, 602 (1912). We feel it most appropriate to employ a maxim of equity in the present case in light of S.C.Code Ann. Sec. 15-1-180 (Law.Co-op.1977) which provides:
 Generally in all matters in which there is any conflict or variance between the rules of equity and the rules of the common law with reference to the same matter the rules of equity shall prevail.