973 F.2d 82
 The TRAVELERS INSURANCE COMPANY, Plaintiff-Appellant,
v.
633 THIRD ASSOCIATES, Tower 41 Associates and Citibank,
N.A., as Trustee of Citibank, N.A. Commingled
Employee Benefit Trust, Defendants-Appellees.
 No. 1130, Docket 91-9038.
 United States Court of Appeals,
Second Circuit.
 Argued March 13, 1992.
Decided Aug. 17, 1992.
 
 David Fleischer, Betsy L. Anderson, Battle Fowler, New York City for plaintiff-appellant.
 Edward Brodsky, James R. DeVita, Jeffrey S. Weintraub, Spengler Carlson Gubar Brodsky & Frischling, New York City, for defendants-appellees, 633 Third Associates and Tower 41 Associates.
 Thomas W. Pippert, Robert W. Lehrburger, Patterson, Belknap, Webb & Tyler, New York City, for defendant-appellee, Citibank, N.A., as Trustee of Citibank, N.A. Commingled Employee Benefit Trust.
 Before: OAKES, Chief Judge, WALKER, Circuit Judge, and PARKER, District Judge.*
 PARKER, Chief Judge:
 
 
 1
 In 1986, plaintiff The Travelers Insurance Company ("Travelers"), a Connecticut corporation, loaned $145 million to defendant 633 Third Associates ("Partnership"), a New York limited partnership which owns a 41-story office building in New York City. The loan was secured by a mortgage on the New York property. The Partnership subsequently encountered difficulties filling the building with tenants, and defaulted on the loan. Unable to recover the full value of its loan by foreclosing on the property, plaintiff sued to set aside as a fraudulent conveyance an amount of $4 million in cash allegedly distributed by the Partnership to its two partners in January 1991, and to enjoin further such conveyances.[1] The United States District Court for the Southern District of New York, Charles S. Haight, Jr., Judge, dismissed the complaint under Rule 12(b)(6), Fed.R.Civ.P., and plaintiff appealed.
 
 
 2
 The sole issue presented is whether plaintiff has standing under sections 274 and 275 of New York's fraudulent conveyance statute[2] to set aside fraudulent conveyances of the Partnership's cash assets in light of a provision in the governing loan and mortgage documents limiting the creditor's remedies in the event of the debtor's default. Those documents contain the following exculpation clause:
 
 
 3
 Notwithstanding anything to the contrary contained in this Note or the Mortgage, the liability and obligation of the Exculpated Parties [defendants and Tower 41's partners] to perform and observe and make good the obligations contained in this Note and the Mortgage shall not be enforced by any action or proceeding wherein damages or any money judgment shall be sought against any of the Exculpated Parties, except a foreclosure action against the Mortgaged Property, but any judgment in any foreclosure action shall be enforceable against the Exculpated Parties only to the extent of Maker's interest in the Mortgaged Property and Payee, by accepting this Note and the Mortgage, waives any and all right to sue for, seek or demand any deficiency judgment against any of the Exculpated Parties in any such foreclosure action, under or by reason of or under or in connection with this Note or the Mortgage.
 
 
 4
 Amended and Restated Note p 15.
 
 
 5
 In orders dated October 31 and November 1, 1991, Judge Haight denied preliminary injunctive relief and dismissed the complaint on the ground that plaintiff lacked standing to assert fraudulent conveyance claims as to funds to which plaintiff, as a nonrecourse creditor under the exculpation provision, had waived any claim. Judge Haight relied on the principle that "for a creditor to maintain a suit to set aside a fraudulent conveyance, it is essential that he shall have been injured by the conveyance.... It cannot be said that a creditor has been ... defrauded until some property out of which he has a specific right to be satisfied is withdrawn from his reach." 37 Am.Jur.2d Fraudulent Conveyances § 172 (1968). Because plaintiff, in the governing documents, foreswore any recourse in the cash allegedly transferred in violation of the New York statute, Judge Haight held that any distribution of the cash to the partners therefore could not cause plaintiff legal injury.[3]
 
 
 6
 Plaintiff takes no issue with the general requirement that a creditor must have been injured by a conveyance before it may seek to set it aside as fraudulent. It further concedes that the exculpation provision bars it from looking to the cash assets of the Partnership in the event of default. Plaintiff argues, however, that it nonetheless has standing to bring this action on the ground that the challenged conveyance caused the value of the real property to decline; in particular, that the property has been allowed to waste through mismanagement and has become subject to a tax lien, superior to the mortgage, as a result of the Partnership's failure to pay local property taxes. Plaintiff contends, in short, that it has suffered the requisite injury because the transfer of the cash assets to the partners caused a diminution in the value of the security, to which plaintiff can look under the exculpation provision.[4]
 
 
 7
 Defendants respond essentially as follows: The Partnership might have defaulted on its loan and tax obligations even had it refrained from distributing the cash assets to the partners, and there would be nothing plaintiff could do about it other than to avail itself of the foreclosure remedy that it bargained for. According to defendants, the cash distribution to the partners in no sense caused any subsequent diminution of the property's value. The Partnership, for its part, struck a bargain which allowed it to hold its cash assets free from liability to plaintiff in the event of default. By this lawsuit, plaintiff, finding the foreclosure remedy inadequate, seeks to undo its bargain, a result the court should not permit.
 
 
 8
 In its Reply Brief to this court, plaintiff counters that, if the conveyance were set aside and the Partnership still refused to pay the taxes and prudently manage the property, plaintiff could then bring a tort action for waste. See Jaffe-Spindler Co. v. Genesco, Inc., 747 F.2d 253, 256 (4th Cir.1984) (mortgagor liable to mortgagee for waste from leaking roof). If that is so, plaintiff has been injured by the alleged fraudulent transfer (and therefore has standing to sue) because the transfer frustrates its right of action to recover in tort. "The non-recourse nature of Travelers' loan does not prevent Travelers from subjecting the Partnership's assets to a personal judgment for damages arising from waste." Reply Brief for Plaintiff-Appellant, at 2.
 
 
 9
 With this proposition we disagree. The damages action suggested by plaintiff is foreclosed by the exculpation clause in the parties' agreement. As quoted above, the defendants' liability "to perform and observe and make good the obligations contained in this Note and the Mortgage shall not be enforced by any action or proceeding wherein damages or any money judgment shall be sought against any of the Exculpated Parties, except a foreclosure action...." Payment of property taxes and prevention of waste are among "the obligations" expressly undertaken by the Partnership in the loan and mortgage documents, see Agreement of Spreader, Consolidation and Modification of Mortgage, Exhibit C, pp 4, 8, and as such cannot be enforced "by any action or proceeding" for damages against the defendants. Denominating the action as one sounding in tort, as urged by plaintiff, does not save it. Plaintiff is simply precluded by the clear terms of its agreement from enforcing these obligations by a damages action. See Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 736 (2d Cir.1984) ("most venerable of contract norms" that contract terms are given effect rather than destroyed). Accordingly, plaintiff may not predicate its standing to set aside fraudulent conveyances on an asserted injury that its right of action to recover damages in tort has been defeated by the conveyances.
 
 
 10
 Although the exculpation provision bars plaintiff from bringing a tort action seeking money damages for waste of the secured property, however, it does not bar an equitable action to prevent waste. The provision forecloses to the creditor "any action or proceeding wherein damages or any money judgment shall be sought"; other remedies for breach of contract or for wrongful waste available under state law remain intact. See North American Consol., Inc. v. Kopka, 644 F.Supp. 191, 192-94 (D.Mass.1986) (claims for specific performance and actual damages actionable in contract dispute despite liquidated damages provision in contract; intent to relinquish right to specific performance must be clearly expressed); Rubinstein v. Rubinstein, 23 N.Y.2d 293, 297-98, 296 N.Y.S.2d 354, 358, 244 N.E.2d 49, 51 (1968) (equitable relief for breach of contract available where remedy at law inadequate and contract did not specifically bar equitable relief); cf. Franklin v. Gwinnett County Public Schools, --- U.S. ----, ----, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992) (once determined that federal statute is enforceable through implied private right of action, court will "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise"). By waiving its right to pursue remedies at law upon the Partnership's default, plaintiff did not thereby waive whatever rights it may have under New York law to sue, in equity, to force the Partnership to pay all property taxes due or otherwise to preserve the value of the property.[5]
 
 
 11
 We believe an equitable action as described may be available to plaintiff in this case, although it has not yet been adequately pled. A mortgagee may bring a waste action against a mortgagor-in-possession to preserve the value of real property. "A person who has a specific lien against real estate has a right to restrain waste by the owner of the real estate." Jaffe-Spindler, 747 F.2d at 257. "Under New York law, there is a substantive cause of action for waste against one in control of real property who does no more than allow the property to deteriorate and decrease in value...." United States v. Miller, 400 F.Supp. 1080, 1084 (S.D.N.Y.1975) (citing 300 West Realty Co. v. City of New York, 43 A.D.2d 680, 350 N.Y.S.2d 147 (App.Div.1973)); see Union Mortgage Co. v. Nelson, 82 N.Y.S.2d 268, 269 (Sup.Ct.1948) (damages suit by mortgagee for physical damage to property caused by mortgagor). Although plaintiffs typically seek damages, they may also request a court injunction to prevent the commission of waste. United States v. State of Washington, 520 F.2d 676, 685 (9th Cir.1975), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); Dime Savings Bank of Brooklyn v. Beecher, 23 A.D.2d 297, 301, 260 N.Y.S.2d 500, 504 (App.Div.1965); cf. State of New York v. Shore Realty Corp., 759 F.2d 1032, 1050-52 (2d Cir.1985) (district court properly issued injunction under New York public nuisance law directing defendants to clean up hazardous waste storage site).
 
 
 12
 An owner's willful failure to pay taxes due on mortgaged real property has been held to be actionable waste remediable at equity in other jurisdictions. See Straus v. Wilsonian Inv. Co., 171 Wash. 359, 17 P.2d 883, 883 (1933). This principle makes good sense--from the secured creditor's vantage point, a tax lien on the secured property may be as costly as a leaky roof--and we presume the courts of New York would include the willful failure to pay property taxes among the actionable grounds for a suit claiming waste. The Partnership in any event specifically assumed liability for payment of property taxes for the mortgaged property; plaintiff may be entitled to sue in equity for specific performance of the Partnership's contractual duties. See AMF Inc. v. Brunswick Corp., 621 F.Supp. 456, 462 (E.D.N.Y.1985).
 
 
 13
 Equitable relief is generally available where legal remedies are unavailable or inadequate. See Franklin v. Gwinnett County Public Schools, --- U.S. at ----, 112 S.Ct. at 1038; Restatement (Second) of Torts § 936 (1979). Damages in this case of course are not available by virtue of the exculpation clause. We conclude, therefore, that plaintiff is not legally barred from bringing an equitable cause of action to prevent waste of the property.
 
 
 14
 Although plaintiff cannot look to the conveyed assets to satisfy its debt in the event of default, we hold that plaintiff nonetheless may have standing under New York's Fraudulent Conveyance Act to set aside the conveyance if the conveyance caused a diminution in the value of the real property, to which plaintiff is entitled to look in the event of default. The causal relationship lies in the fact that, if the assets are returned to the Partnership, the district court has the equitable power in appropriate circumstances to direct the Partnership to apply the assets to abate the waste--that is, to pay any overdue taxes or otherwise to preserve the value of the property. Since this equitable claim was never presented fully to the district court (nor, for that matter, to this Court) the district court understandably overlooked it. Under the circumstances, we must reverse the district court's ruling that the exculpation clause in the loan and mortgage documents deprived plaintiff of standing simpliciter.
 
 
 15
 A/S Kreditt-Finans v. Cia Venetico de Navegacion S.A. of Panama, 560 F.Supp. 705 (E.D.Pa.1983), aff'd, 729 F.2d 1446 (3d Cir.1984), principally relied upon by defendants, is not to the contrary. The court, applying New York's fraudulent conveyance statute, held that a judgment creditor of a shipowner did not suffer the requisite injury to challenge a transfer of the ship where prior mortgages on the ship exceeded the equity in the ship. Id. at 711. The judgment creditor had no possible interest remaining in the property. In the present case, while Travelers has waived its right to look to the transferred assets as a source of payment, it can and does claim that it is injured by the transfer, as outlined above, consistent with the injury requirement set forth in A/S Kreditt-Finans:
 
 
 16
 The New York courts, like courts in other jurisdictions, have seldom used the explicit "proof of injury" language in cases under the UFCA [Uniform Fraudulent Conveyance Act]. Perhaps ... this is because creditors ordinarily do not seek to invalidate transactions that cause them no injury and accordingly the question arises only infrequently. However, at least one New York appellate court has held that under the UFCA "creditors have causes of action only to the extent to which they have been damaged." Buckley Petroleum Products, Inc. v. Goldman, 28 A.D.2d 640, 641, 280 N.Y.S.2d 876, 878 (1967). See Suffolk & Nassau Amusement Co. v. Ambrose, 145 N.Y.S.2d 424 (N.Y.Sup.Ct.1955) (holding that a plaintiff who has not sustained any damage as the result of a transfer of property cannot seek to set that transfer aside as fraudulent). Moreover, numerous courts in other jurisdictions in which the issue has arisen have stated as though it were axiomatic the requirement that a creditor be injured by the conveyance it seeks to invalidate.
 
 
 17
 Id. (footnotes omitted).
 
 
 18
 Defendants also rely upon Marine Midland Bank v. Murkoff, 120 A.D.2d 122, 508 N.Y.S.2d 17 (App.Div.1986), where a judgment creditor challenged, under New York fraudulent conveyance law, the debtor's transfer of his interest in his jointly-owned home to his wife. The trial court entered partial summary judgment for the creditor, "directing the clerk to record the money judgments the plaintiff had previously obtained as liens against the real property of [the debtor's wife] 'to the extent of [the debtor's] prior interest therein.' " Id. at 125, 508 N.Y.S.2d at 20. On appeal, the creditor complained that this remedy was inadequate because its lien remained subject to the debtor's wife's right of survivorship in the house; it urged broader relief including a termination of the tenancy by the entirety, a money judgment against the debtor's wife, and imposition of a constructive trust upon the property for its benefit. Id. at 126, 508 N.Y.S.2d at 20. In the course of its discussion rejecting most of the creditor's claims on appeal, the Appellate Division stated that "[t]he creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." Id. at 133, 508 N.Y.S.2d at 25. Based on this principle, the creditor would not be entitled to a money judgment from the debtor's wife, nor to an order terminating the tenancy by the entirety (for the debtor's interest in the property prior to the conveyance was already subject to his wife's right of survivorship), nor to a constructive trust.
 
 
 19
 The principle does not, however, resolve the present issues in the Partnership's favor, as defendants urge. Murkoff stands for the proposition that a judgment creditor does not gain new rights in property by means of a fraudulent conveyance action. Nothing in our opinion today contradicts this principle. A secured creditor, such as Travelers, is similarly barred from using the fraudulent conveyance action as a means to expand its interests in property. Like the creditor in Murkoff, its remedy is "limited to reaching the property which would have been available ... had there been no conveyance." Thus, in the exculpation clause, plaintiff waived the right to seek a deficiency judgment; it cannot now appropriate that right by invoking the fraudulent conveyance statute. However, to the extent plaintiff would have been entitled, absent the conveyance, to obtain an equitable decree enjoining the Partnership to apply its cash assets in a manner to preserve the property's value, it may likewise "reach" the cash assets for the same purpose in the fraudulent conveyance action. Plaintiff has a cognizable interest in preserving the property from waste, an interest which arose at the closing of its security agreement, prior to the conveyance of the cash assets to the partners. It does not seek to create any new rights to property by this action. Unlike the creditor in Murkoff, Travelers seeks only to preserve the property rights it had prior to the conveyance, to wit, recourse to the secured property and the right to equitably restrain its waste.
 
 
 20
 Defendants also cite Holthaus v. Parsons, 238 Neb. 223, 469 N.W.2d 536, 538 (1991), which does contain a stronger statement of the injury requirement--that "the conveyance put beyond the creditor's reach property which would be subject to the payment of his debt." Travelers cannot pass this test. The factual context in Holthaus, however, as in Kreditt-Finans but not the instant case, involved a judgment creditor challenging the transfer of property which was subject to prior liens that exceeded its market value. The court was not presented with an injury of the sort presented here. We do not believe, in any event, that the strict injury test articulated in Holthaus is appropriate as a judicial gloss on a statute that is remedial in purpose and therefore is to be liberally construed in the protected party's favor. See Festa v. Leshen, 145 A.D.2d 49, 55, 537 N.Y.S.2d 147, 152 (App.Div.1989).
 
 
 21
 Whether plaintiff can sustain--or even adequately plead--an equitable action against the defendants as described cannot be determined on the present record. Accordingly, plaintiff will be afforded an opportunity to amend the complaint, to set forth with specificity any allegations of waste. Fed.R.Civ.P. 15(a). To the extent plaintiff seeks to incorporate "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented," the district court may grant leave to amend "even though the original pleading is defective in its statement of a claim for relief or defense." Fed.R.Civ.P. 15(d). If the complaint as amended alleges sufficient facts to support the requisite injury--that is, that plaintiff's equitable cause of action to preserve the value of the secured property was effectively defeated by the conveyance of the cash assets to the partners--plaintiff will have established standing to sue under New York's fraudulent conveyance law.
 
 
 22
 We emphasize the narrowness of our decision: we merely vacate the dismissal of the action and direct the district court to permit plaintiff to file an amended complaint. Whether the amended pleading survives a new motion to dismiss is a matter for the district court to decide in further proceedings consistent with this opinion.
 
 
 23
 Vacated and remanded with instructions to grant plaintiff leave to amend complaint.
 
 
 
 *
 The Honorable Fred I. Parker, Chief District Judge, United States District Court for the District of Vermont, sitting by designation
 
 
 [1]
 Plaintiff joined as defendants the Partnership's sole general partner, Tower 41 Associates, and sole limited partner, Citibank, N.A., as Trustee of Citibank, N.A. Commingled Employee Benefit Trust
 
 
 [2]
 N.Y.Debt. & Cred.Law §§ 270-81 (McKinney 1990). Section 274 declares a conveyance fraudulent as to creditors if "made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital." Section 275 similarly declares conveyances fraudulent where the conveying person "intends or believes that he will incur debts beyond his ability to pay as they mature." The New York act is a codification of the Uniform Fraudulent Conveyance Act
 
 
 [3]
 Judge Haight denied plaintiff's request for a preliminary injunction on the additional ground that plaintiff was unable to demonstrate irreparable injury. Although plaintiff initially appealed from this portion of the district court's ruling as well as from the Rule 12(b)(6) dismissal, plaintiff conceded at oral argument that the request for a preliminary injunction is now moot. Accordingly, we do not reach the issue
 
 
 [4]
 Plaintiff further argues that, notwithstanding the exculpation provision in the loan documents, Travelers' interest might be treated as a recourse claim under the Bankruptcy Code in certain circumstances, if the Partnership were to enter bankruptcy proceedings. See 11 U.S.C. § 1111(b)(1)(A). How the claim would fare in hypothetical circumstances in bankruptcy proceedings, however, is of no help to plaintiff here
 
 
 [5]
 Plaintiff fails to set forth this argument with clarity or completeness in the briefs, although it does mention in an apparent afterthought, on page 11 of the Reply Brief, that "Travelers may also be entitled to injunctive relief to prevent threatened waste." Nonetheless, the issue of the impact of the exculpation clause on plaintiff's standing to assert fraudulent conveyance claims is squarely before us, and "we are not precluded from supplementing the contentions of counsel through our own deliberation and research." Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983)