14 F.3d 114
 The TRAVELERS INSURANCE COMPANY, Plaintiff-Appellant,
v.
633 THIRD ASSOCIATES, Tower 41 Associates, Joseph T. Comras,
Stanley Stahl, Robert Carmel and Citibank, N.A. as
Trustee of Citibank, N.A. Commingled
Employee Benefit Trust,
Defendants-Appellees.
 No. 253, Docket 93-7270.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 14, 1993.
Decided Jan. 4, 1994.
 
 David Fleischer, New York City (Battle Fowler, Stewart Klein, of counsel), for plaintiff-appellant.
 John Linsenmeyer, New York City (Richard A. Mescon, Thomas R. Stritter, Morgan, Lewis & Bockius, of counsel), for defendants-appellees 633 Third Associates, Tower 41 Associates, Joseph T. Comras, Stanley Stahl, and Robert Carmel.
 Marc S. Kirschner, New York City (Robert W. Gaffey, Jones, Day, Reavis & Pogue, of counsel), for defendant-appellee Citibank, N.A., as Trustee of Citibank, N.A. Commingled Employee Benefit Trust.
 Before: OAKES and MAHONEY, Circuit Judges, and MISHLER, Senior District Judge.*
 OAKES, Senior Circuit Judge:
 
 I. BACKGROUND
 
 1
 This dispute is before this court for a second time. See Travelers Ins. Co. v. 633 Third Assocs., 973 F.2d 82 (2d Cir.1992) ("Travelers I "). It is useful, however, to reiterate the basic facts.
 
 
 2
 In 1986, plaintiff, The Travelers Insurance Company ("Travelers"), a Connecticut corporation, loaned $145 million to defendant 633 Third Associates ("Partnership"), a New York limited partnership that owns a single property--a 41-story office building in New York City ("the Property"). The loan was secured by a non-recourse mortgage on the Property. In 1990, the Partnership learned that it would lose some important tenants. Facing a depressed New York real estate market and mounting vacancies, the Partnership distributed $4 million in accumulated cash assets to its partners and prepared to distribute another $17 million.
 
 
 3
 On August 22, 1991, Travelers brought suit[1] to set aside the $4 million distribution and to enjoin the $17 million distribution as fraudulent conveyances under the law of New York.[2] The United States District Court for the Southern District of New York, Charles S. Haight, Jr., District Judge, denied preliminary injunctive relief and dismissed the complaint under Fed.R.Civ.P. 12(b)(6). Travelers appealed, bringing the dispute before a panel of this court for the first time.[3]
 
 
 4
 Judge Haight denied preliminary injunctive relief and dismissed the complaint on the ground that Travelers lacked standing to bring a suit to set aside a fraudulent conveyance. Travelers Ins. Co. v. 633 Third Assocs., et al., No. 91 Civ. 5735 (CSH), 1991 WL 236842 (S.D.N.Y. Oct. 31, 1991) (order denying temporary restraining order); Travelers Ins. Co. v. 633 Assocs., et al., No. 91 Civ. 5735 (CSH) (S.D.N.Y. Nov. 1, 1991) (order denying preliminary injunction and dismissing complaint). Judge Haight determined that, under New York law, only those who have been injured by a conveyance have standing to set it aside as fraudulent. Judge Haight reasoned that Travelers had no property interest in the accumulated cash assets of the Partnership because Travelers had secured its loan by a non-recourse mortgage on the Property.[4] Accordingly, in Judge Haight's view, Travelers could not claim that it was injured by the actual or threatened distribution.
 
 
 5
 On January 1, 1992, the Partnership failed to pay property taxes and failed to meet a payment on its loan, thereby defaulting. On January 13, 1992, the Partnership distributed $17 million to its partners. On January 14, 1992, Travelers filed for foreclosure of the mortgaged property. A receiver was appointed by a New York Supreme Court on January 27, 1992. Order Appointing Receiver dated January 27, 1992 in Travelers Ins. Co. v. 633 Third Assocs., Index No. 01138/92 (N.Y.Sup.Ct.New York County).
 
 
 6
 In an opinion dated August 17, 1992, a unanimous panel of this court vacated Judge Haight's order.[5] Travelers I, 973 F.2d 82. This court held that the non-recourse provision did not preclude an action for equitable relief. Because Travelers could have brought an equitable action to enjoin distribution of the Partnership's cash assets, insofar as such distribution operated as waste in allowing the value of the property to decrease, this court reasoned that the Partnership may have been injured by the distribution and, accordingly, might have had standing under New York's fraudulent conveyance law. This court therefore remanded the case with instructions to provide Travelers with an opportunity to amend its complaint to allege facts supporting an equitable action for waste.
 
 
 7
 On November 9, 1992, Travelers filed an amended complaint alleging that the distributions rendered the Partnership incapable of performing its obligations under the loan, including the payment of property taxes.[6] Travelers claimed that failure to pay the property taxes would constitute waste remediable in equity under New York law, as would failure to maintain the property in good condition and repair. Travelers did not limit itself to stating facts sufficient to establish standing under New York fraudulent conveyance law, however. Rather, Travelers amended its complaint to include a claim for equitable relief from waste and for specific performance of the Partnership's obligations along with its original claims for equitable relief from the distributions under the law of fraudulent conveyances.
 
 
 8
 The District Court dismissed Travelers' amended complaint on the ground that an equitable action for waste would lie only against a mortgagor in possession. Travelers Ins. Co. v. 633 Third Assocs., 816 F.Supp. 197 (S.D.N.Y.1993). Citing the appointment of a receiver on January 27, 1993, Judge Haight found that the Partnership was no longer in possession. Consequently, Judge Haight dismissed Travelers' claim of waste. Judge Haight also dismissed Travelers' fraudulent conveyance claims. Finally, Judge Haight dismissed Travelers' claims for specific performance.
 
 II. DISCUSSION
 
 9
 This appeal presents two main questions of New York law. The first is whether New York law recognizes failure to pay property taxes as waste, a question which we left for the district court to answer on the prior appeal. Travelers I, 973 F.2d at 85-86. The second is whether the appointment of a receiver on January 27, 1992 ousts the Partnership of possession thereby depriving Travelers of any pre-existing (1) cause of action for waste, (2) claims for specific performance, and (3) standing to set aside the distributions as fraudulent conveyances.
 
 A. Failure to Pay Property Taxes as Waste
 
 10
 The central issue in this appeal is whether failure to pay property taxes constitutes waste under New York law. This issue is important both to Travelers' claims of waste and to Travelers' claims of fraudulent conveyance.
 
 
 11
 Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 28 U.S.C. Sec. 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."); see generally In re Eastern and Southern Districts Asbestos Litig., 772 F.Supp. 1380, 1388-91 (E. & S.D.N.Y.1991), rev'd on other grounds, In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831 (2d Cir.1992). In ascertaining the substantive law of the forum, federal courts will look to the decisional law of the forum state, as well as to the state's constitution and statutes. Erie, 304 U.S. at 78, 58 S.Ct. at 822. Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity. See Minotti v. Lensink, 798 F.2d 607, 610-11 (2d Cir.1986) (predicting Connecticut law), cert. denied, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987).
 
 
 12
 Because the law of New York is unclear as to whether failure to pay property taxes constitutes waste, this court must "carefully review available resources to predict how the New York Court of Appeals would resolve the questions at bar." In re Eastern and Southern Districts Asbestos Litig., 772 F.Supp. at 1389. These resources include "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe the state statute, scholarly works and any other reliable data tending to indicate how the New York Court of Appeals would resolve the [issue]." Id. at 1391. In considering state decisional law, we must afford the fullest weight to the pronouncements of the New York Court of Appeals. See Sanchez v. United States, 696 F.2d 213, 216 (2d Cir.1982). Where there is "no decision by th[e state's highest] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). We will also consider relevant cases from jurisdictions other than New York in an effort to predict "[w]hat would be the decision of reasonable intelligent lawyers, sitting as judges of the highest New York court, and fully conversant with New York 'jurisprudence.' " Cooper v. American Airlines, 149 F.2d 355, 359 (2d Cir.1945); see Leon's Bakery Inc. v. Grinnell Corp., 990 F.2d 44, 48 (2d Cir.1993) (federal court may consider all sources used by the highest court of the state, including decisions of other jurisdictions).
 
 
 13
 The common law doctrine of waste emerged in response to problems of divided ownership that occurred when, say, an owner in fee simple granted a tenant an estate in years. The tenant had an incentive to maximize the stream of benefits that could be realized from the property during the period of his tenancy. The owner, on the other hand, preferred that the property be managed so as to maximize the stream of benefits that could be realized over the life of the property. An action for waste gave the owner a remedy against a tenant who undermined the long-term profit maximizing potential of the property in order to realize short-term gains. At first the doctrine of waste prohibited any change in the property. Over time, however, it came to prohibit only those changes that reduced the long-term value of the property. In this way, it has been suggested by one commentator, the doctrine of waste developed to force tenants to manage the property as if they were the owner of the property. See Richard A. Posner, Economic Analysis of Law, 64-65 (1986).
 
 
 14
 New York has codified a common law cause of action for waste:
 
 
 15
 An action for waste lies against a tenant by the curtesy, in dower, for life, or for years, or the assignee of such a tenant, who, during his estate or term, commits waste upon the real property held by him, without a special and lawful written license so to do; or against such a tenant who lets or grants his estate and still retaining possession thereof commits waste without a like license.
 
 
 16
 N.Y.Real Prop.Acts.Law, Sec. 801 (McKinney 1979).[7] This cause of action provides for both legal and equitable relief. See Dime Sav. Bank of Brooklyn v. Beecher, 23 A.D.2d 297, 301, 260 N.Y.S.2d 500, 504 (App.Div.2d Dep't 1965) (suggesting the availability of equitable relief), appeal dismissed, 17 N.Y.2d 725, 216 N.E.2d 838, 269 N.Y.S.2d 976 (1966).
 
 
 17
 New York Courts have recognized two general categories of waste. First, as this court observed in the previous appeal, New York courts recognize " 'a substantive cause of action for waste against one in control of real property who does no more than allow the property to deteriorate and decrease in value....' " Travelers I, 973 F.2d at 85 (quoting United States v. Miller, 400 F.Supp. 1080, 1084 (S.D.N.Y.1975) (citing 300 West Realty Co. v. City of New York, 43 A.D.2d 680, 350 N.Y.S.2d 147 (App.Div. 1st Dep't 1973))). Second, New York courts recognize a cause of action for waste by a mortgagee against a mortgagor who impairs the mortgage. See Union Mortgage Co. v. Nelson, 82 N.Y.S.2d 268, 269 (Sup.Ct.Bronx County 1948) (damages suit by mortgagee for damage to property caused by mortgagor), aff'd, 275 A.D. 1028, 91 N.Y.S.2d 839 (App.Div. 1st Dep't 1949); Syracuse Sav. Bank v. Onondaga Silk Co., Inc., 14 N.Y.S.2d 356, 357-59, 171 Misc. 993 (Sup.Ct.Onondaga County 1939) ("This action is not strictly an action for waste such as comes within the provisions of [the predecessor of N.Y.Real Prop.Acts. Sec. 801]. The interest of the mortgagee in the property is a contingent interest.... The cause of action alleged in the complaint is for the impairment of the security of the mortgages and was formerly called an action on the case in the nature of waste.... The essence of an action of this kind is the impairment of the security of the mortgage. The mortgagee is entitled to have his mortgage security unimpaired by acts of the mortgagor or his grantee."); Van Pelt v. McGraw, 4 N.Y. 110 (N.Y.1850).
 
 
 18
 The existence of two categories of a cause of action is only rarely recognized explicitly. See Syracuse Sav. Bank, 14 N.Y.S.2d at 359, 171 Misc. 993 (providing a rare explicit recognition of the distinction). Consequently, our task is made more difficult by the tendency of both the New York courts and the parties to this action to borrow language from physical injury cases for application to mortgage impairment cases. It is clear that injury to real property is an essential aspect of many actions for waste. See Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759 (2d Cir.1990) (dismissing student's claim that university's failure to award degree constituted waste), cert. denied, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991). It is evident, however, that physical damage should not be required in an action for waste claiming impairment of the security of a mortgage. Given the recognition by New York courts of two distinct categories of waste, we will not blindly import language from one category into another. Furthermore, we have been unable to find a single case holding that financial injury to real property may never constitute waste.
 
 
 19
 The difference between the two categories of an action for waste can best be illustrated by an example. Under New York law, an action for waste will lie against a tenant who fails to undertake certain repairs on the property. See Watner v. P & C Food Mkts., Inc., 138 A.D.2d 959, 526 N.Y.S.2d 292, 293 (App.Div. 4th Dep't 1988) ("tenant has an implied obligation to refrain from affirmative acts of waste and to make 'tenantable' repairs to avoid permissive waste of the leasehold"); see also Suydam v. Jackson, 54 N.Y. 450 (1873); Marcy v. City of Syracuse, 199 A.D. 246, 255-256, 192 N.Y.S. 674 (App.Div. 4th Dep't 1921); but see Staropoli v. Staropoli, 180 A.D.2d 727, 580 N.Y.S.2d 369 (App.Div.2d Dep't 1992) (failure to paint exterior of marital residence did not constitute waste). If a mortgagor were to undertake these repairs through, say, a contractor, the mortgagor could satisfy its duty and escape liability for waste for physical injury. If the mortgagor failed to pay the contractor, however, a mechanic's lien would attach against the property. N.Y.Lien Sec. 3 (McKinney 1993). The mortgagor would then be liable for waste for the impairment of a mortgage even though no injury were done to the property. If an action for waste for the impairment of the mortgage would not lie, it would be possible for mortgagors to escape liability for permissive waste by contracting for necessary repairs, defaulting on repair bills, and allowing a mechanic's lien to attach to the property.
 
 
 20
 It is uncertain whether New York law recognizes the willful failure to pay taxes as actionable waste. In the previous appeal, this court wrote that it "believe[d] an equitable action ... may be available to plaintiff in this case, although it has not yet been adequately pled." Travelers I, 973 F.2d at 85. This court, therefore, vacated and remanded the District Court's decision with instructions to grant Travelers leave to amend its complaint. Id. at 88. This court emphasized, however, the narrowness of its decision:
 
 
 21
 [W]e merely vacate the dismissal of the action and direct the district court to permit plaintiff to file an amended complaint. Whether the amended pleading survives a new motion to dismiss is a matter for the district court to decide in further proceedings consistent with this opinion.
 
 
 22
 Id. This court did not decide, as a matter of law, that New York law would recognize the willful failure to pay property taxes as waste remediable by an action in equity. Rather, this court merely noted,
 
 
 23
 An owner's willful failure to pay taxes due on mortgaged real property has been held to be actionable waste remediable at equity in other jurisdictions. See Straus v. Wilsonian Inv. Co., 171 Wash. 359, 17 P.2d 883, 883 (1933). The principle makes good sense--from the secured creditor's vantage point, a tax lien on the secured property may be as costly as a leaky roof--and we presume the courts of New York would include the willful failure to pay property taxes among the actionable grounds for a suit claiming waste.
 
 
 24
 Id. at 85-86. The reluctance of this court to more firmly set forth its view of the law of New York on this issue can, perhaps, be attributed to the fact that an action for waste had "not yet been adequately pled," id. at 85, much less briefed.
 
 
 25
 On remand, the District Court dismissed the amended complaint's claims for waste and fraudulent conveyance on the ground that the Partnership was no longer in possession of the property and, therefore, could not be the subject of an action for waste. In dismissing the complaint, the District Court noted in dicta that it did not find persuasive the Second Circuit's "presumption" that New York law would recognize the willful failure to pay property taxes as actionable waste. Before examining whether the appointment of a receiver ousts the Partnership of possession and deprives Travelers of the opportunity to bring an action for waste, therefore, it is necessary to determine whether New York state law would recognize willful failure to pay property taxes as waste remediable by an action in equity.
 
 
 26
 While the New York cases on waste tend to deal with mortgage impairment resulting from physical injury to real property, at least one case clearly contemplates that, in certain circumstances, an action in waste will lie for financial injury to real property. In Union Mortgage Co. v. Nelson, 82 N.Y.S.2d at 270, Justice Corcoran citing a Maine case wrote,
 
 
 27
 It is true that the failure of a life tenant to pay taxes has been held waste in so far as the remainderman is concerned.
 
 
 28
 While the court went on to hold that the case at bar did not present a situation in which an action in waste would lie, the court was more concerned with the fact that the action was brought by a junior mortgagee than with the fact that the action claimed that failure to pay taxes was waste. See Union Mortgage, 82 N.Y.S.2d at 270. In discussing this case, the District Court noted that on appeal the Appellate Division four-sentence memorandum decision wrote, "The allegations sought to be added by the amended and supplemental complaint are factually nothing more than non-payment of first mortgage interest and taxes. This is not waste in a legal sense." Union Mortgage Co. v. Nelson, 275 A.D. 1028, 91 N.Y.S.2d 839 (App.Div., 1st Dep't 1949). The District Court failed to note, however, that the Appellate Division went on to write, "In the absence of showing fraud or some obligation on the part of defendant owing to plaintiff to make such payments, neither the proposed amended nor supplemental complaint make out a cause of action." Id. This seems to suggest that the Appellate Division would countenance an action for waste for failure to pay taxes where that failure occurred in violation of the mortgagor's obligations or where the failure was willful, intentional, fraudulent, or the like.
 
 
 29
 The District Court cites another Supreme Court case, Ganbaum v. Rockwood Realty Corp., 62 Misc.2d 391, 308 N.Y.S.2d 436 (Sup.Ct.Bronx Co.1970), for the proposition that waste does not include the breach of financial conditions. Ganbaum, however, cites a single case for this proposition--Union Mortgage. Id. 62 Misc.2d at 396, 308 N.Y.S.2d 436. And, as we have seen, in considering Union Mortgage on appeal, the Appellate Division's First Department contemplated the possibility of an action in waste for failure to pay taxes upon a showing of fraud or an obligation to pay.
 
 
 30
 A line of New York cases has interpreted the scope of an action for waste broadly. In Van Pelt v. McGraw, 4 N.Y. 110, 111-12 (1850), the New York Court of Appeals said:
 
 
 31
 It forms no objection to this action that the circumstances of the case are novel, and that no case precisely similar in all respects has previously arisen. The action is based upon very general principles, and is designed to afford relief in all cases where one man is injured by the wrongful act of another, where no other remedy is provided. This injury may result from some breach of positive law, or some violation of a right or duty growing out of the relations existing between the parties.... The defendant ... in this case, came into possession of the land subject to the mortgage. The rights of the holder of the mortgage were therefore paramount to his rights, and any attempt on his part to impair the mortgage as a security, was a violation of the plaintiff's rights.
 
 
 32
 Justice Kimball of the New York Supreme Court has written,
 
 
 33
 Such an action [for waste], whether against a mortgagor, a stranger, or other person seems to have been of ancient origin and came into use by reason of the exigencies of the particular set of circumstances, the law not being without a remedy for a wrong.
 
 
 34
 Syracuse Sav. Bank, 14 N.Y.S.2d at 358, 171 Misc. 993. The Appellate Division's Third Department has observed, "[I]t has been well remarked that courts of equity will exercise a liberal jurisdiction in respect to waste, and in its restraint." Vandemark v. Schoonmaker, 9 Hun (N.Y.) 16, 19 (App.Div. 3d Dep't 1876); see also Wade v. Malloy, 16 Hun (N.Y.) 226, 230 (App.Div. 2d Dep't 1878) (waste remediable though "no precise precedent for such an action as this ..., for it is one of the chief beauties of our system of jurisprudence that it is flexible, and opens to take in all meritorious cases and give a remedy.").
 
 
 35
 Together with this line of New York cases interpreting the cause of action for waste broadly, the contemplation by the Appellate Division's First Department of an action for waste for failure to pay taxes suggests that an equitable action for waste would lie under New York law for the intentional failure to pay property taxes where there is an obligation to do so or the failure is intentional or fraudulent.
 
 
 36
 As we have previously noted, other courts have recognized the failure to pay property taxes as waste. See Pike v. Wassell, 94 U.S. 711, 715, 24 L.Ed. 307 (1876) ("The defendants admit that they have determined not to pay the taxes upon the property. The danger of incumbrance by reason of this failure to perform their duties as tenants for life is, therefore, imminent, and the case a proper one for a court of equity to interfere and grant appropriate relief."); Hausmann v. Hausmann, 231 Ill.App.3d 361, 172 Ill.Dec. 937, 596 N.E.2d 216 (App.Ct. 5th Dist.1992); Chapman v. Chapman, 526 So.2d 131, 135 (Fla.Ct.App.1988); First Nat'l Bank v. Clark & Lund Boat Co., 68 Wis.2d 738, 229 N.W.2d 221, 223 (Sup.Ct.1975); Farmers' Mut. Fire & Lightning Ins. Co. v. Crowley, 354 Mo. 649, 653, 190 S.W.2d 250, 253 (1945); Thayer v. Shorey, 287 Mass. 76, 191 N.E. 435 (Sup.Jud.Ct.1934); Straus v. Wilsonian Inv. Co., 171 Wash. 359, 17 P.2d 883 (Sup.Ct.1933); Mutual Benefit Life Ins. Co. v. Canby Inv. Co., 190 Minn. 144, 147, 251 N.W. 129, 131 (Sup.Ct.1933). Most recently, a United States District Court in Illinois held that "failure to pay taxes constitutes waste as that term has been defined by the Illinois courts." Capitol Bankers Life Ins. Co. v. Amalgamated Trust and Sav. Bank, No. 92 C 4480, 1993 WL 594103, at * 5 (N.D.Ill. May 6, 1993).
 
 
 37
 We hold that the intentional failure to pay property taxes where there is an obligation to do so or where the failure is fraudulent constitutes waste under the law of New York. We note, however, the narrow limits of this holding. Not every failure to comply with loan obligations will constitute waste actionable by the mortgagee. First, the failure must be intentional or fraudulent. Second, the failure must result in the impairment of the security of the mortgage. The mere failure to pay principal and interest, for example, will not constitute waste. Such failure does not impair the mortgage. Instead, such failure triggers default provisions and gives the mortgagee the right to foreclose on the mortgaged property.[8] By contrast the intentional failure to pay property taxes does impair the mortgage. Under New York Real Property Tax law, a lien attaches against real property immediately upon the failure to pay assessed property taxes. N.Y.Real Prop.Tax Sec. 902 (McKinney 1989). Further, under the New York City Administrative Code, interest accrues on the unpaid real estate taxes at the rate of 18 percent per annum compounded daily. See N.Y.C.Admin.Code Secs. 11-123, -224; New York City Department of Finance, Finance Quarterly Bulletin, Fall 1991. A mortgagee who attempts to foreclose on real property must pay the accrued taxes and interest in order to assume title to the property free of these liens.[9]
 
 
 38
 It should be noted that, in addition to claiming waste for willful failure to pay property taxes, Travelers claimed waste for failure to maintain the property in good condition. This, too, states an adequate basis for waste. New York law is clear that a "tenant has an implied obligation to refrain from affirmative acts of waste and to make 'tenantable' repairs to avoid permissive waste of the leasehold." Watner v. P & C Food Mkts., Inc., 138 A.D.2d 959, 526 N.Y.S.2d 292, 293 (App.Div. 4th Dep't 1988) (lower court "erred in denying plaintiff's motion for leave to amend her complaint to assert a cause of action for waste"); see also Suydam v. Jackson, 54 N.Y. 450; but see Staropoli v. Staropoli, 180 A.D.2d 727, 580 N.Y.S.2d 369 (App.Div. 2d Dep't 1992) (failure to paint exterior of marital residence did not constitute waste).
 
 
 39
 B. Possession and the Consequences of the Appointment of a Receiver
 
 
 40
 On January 27, 1992, the New York Supreme Court appointed a receiver for the mortgaged property. The order of receivership transferred possession from the Partnership to the receiver. See Order Appointing Receiver dated January 27, 1992 in Travelers Ins. Co. v. 633 Third Assocs., Index No. 01138/92 (N.Y.Sup.Ct.New York County) ("ORDERED, that all persons now or hereafter in possession of the Mortgaged Property, or any part thereof, and not holding such possession under valid and existing leases or licenses, do forthwith surrender such possession to the Receiver subject to the Emergency Rent Laws, if any"). The question for this appeal is what effect the transfer of possession from the Partnership to the receiver has on Travelers' (1) cause of action for waste, (2) claims for specific performance, and (3) standing to set aside the distributions as fraudulent conveyances.
 
 1. Travelers' Claim for Waste
 
 41
 a. Waste After the Appointment of the Receiver
 
 
 42
 To the extent that Travelers' claims of waste relate to conduct that occurred after the appointment of the receiver, they were properly dismissed.
 
 
 43
 Travelers concedes that the District Court correctly determined that an action for waste will lie only against a mortgagor in possession. Brief for Appellant at 20. We said as much on the first appeal. Travelers I, 973 F.2d at 85; see also United States v. Miller, 400 F.Supp. 1080, 1084 (S.D.N.Y.1975). Travelers argues that the District Court's dismissal should nevertheless be reversed on the ground that an action for waste lies against the Partnership as the retainer of an "equity of redemption, which enables it to reclaim possession at any time prior to the conclusion of the foreclosure sale." Travelers' Brief at 26.
 
 
 44
 Travelers does not cite, nor has this court found, any decision of the courts of New York suggesting that an action in waste will lie for waste committed by one with a contingent possessory interest. In addition, extension of the action to those who retain an "equity of redemption" would sever the doctrine of waste from its underlying rationale. If an action for waste exists to induce persons in possession or control of real property to manage it as if they were the owners, because the Partnership here is out of possession and control, it has no opportunity to exploit the property, regardless of its equity of redemption.
 
 
 45
 b. Waste Before the Appointment of the Receiver
 
 
 46
 It is undisputed that the Partnership was in possession of the Property before the Receiver's appointment and at the time of the original complaint. Travelers Ins. Co. v. 633 Third Assocs., 816 F.Supp. at 202. To the extent, therefore, that Travelers' claims of waste relate to conduct occurring before the appointment of the receiver, they were improperly dismissed.
 
 
 47
 Under both federal and New York rules, an amended complaint relates back to the date of the original complaint. See, Fed.R.Civ.P. 15(c) ("[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"); N.Y.Civ.Prac.L. & R. 203(f) (McKinney Supp.1993).
 
 
 48
 Travelers' amended complaint brings claims of waste, breach of contract, and fraudulent conveyances based on the very series of transactions and occurrences alleged in the original complaint. Accordingly, the claims in Travelers' amended complaint relate back to the time of the original complaint.
 
 
 49
 Having determined that a mortgagor's willful failure to pay property taxes constitutes waste, it is necessary to determine the amount of the waste where the mortgagor is in possession of the property for only a portion of the period for which property taxes are assessed. Judge Haight's opinion seems to indicate that even if the willful failure to pay property taxes constitutes waste, the Partnership is not liable for waste because it paid a portion of the taxes prorated for the period of time during which the Partnership was in possession of the property. Travelers Ins. Co., 816 F.Supp. at 202-04.
 
 
 50
 It should first be noted, that the District Court incorrectly assumed that the Partnership paid a prorated share of this assessment to reflect the number of days it remained in possession for the period of the assessment. Id. at 202. As pointed out in Travelers' brief, however, this assumption was erroneous. Travelers' Brief at 21. The Partnership paid $426,394.99 towards the $3,803,888.04 installment of real estate taxes assessed for the 182-day period from January 1 to June 30, 1992. $3,803,888.04 divided by 182 equals $20,900.48. The Partnership was in possession of the Property for 27 days of this period. $20,900.48 multiplied by 27 is $564,313.06. The Partnership's prorated share of the assessment, therefore, was $564,313.06. This figure exceeds the sum actually paid by the Partnership by $137,918.07.
 
 
 51
 As discussed above, a mortgagor's willful failure to pay property taxes constitutes actionable waste because it results in the impairment of the mortgage. To determine the amount of the waste, therefore, a court need look no further than the extent to which the mortgage was impaired.
 
 
 52
 On January 1, 1992, property taxes for the period from January 1, 1992 to June 30, 1992 were assessed against the Property.[10] This assessment became due and payable in full on January 1, 1992. Indeed, New York law is clear in affixing liability for property tax assessments based on possession at the time the property tax liability accrued. See, e.g., Wilson & Co., Inc. v. City of New York, 73 N.Y.S.2d 206, 209 (Sup.Ct. New York County 1947), aff'd, 276 A.D. 755, 92 N.Y.S.2d 918 (1st Dep't 1949), appeal denied, 276 A.D. 894, 94 N.Y.S.2d 198 (1st Dep't 1950); Prudential Ins. Co. of Am. v. Liberdar Holding Corp., 74 F.2d 50, 52 (2d Cir.1934); Wagner v. White, 225 A.D. 227, 232 N.Y.S. 433, 434-35 (1st Dep't), appeal dismissed, 251 N.Y. 540, 168 N.E. 419 (1929). Failure to pay this assessment in full resulted in the attachment of a lien against the property for the full amount of the tax assessed. See N.Y.Real Prop.Tax Sec. 902. Because the mortgage was impaired by the full amount of the property taxes assessed, an equitable action for waste will lie for willful failure to pay the full amount of the property taxes due (less any amount actually paid) and not just for willful failure to pay a portion of the property taxes prorated for the period of the Partnership's possession.
 
 
 53
 Travelers' claims of waste for conduct occurring before the appointment of receiver, including the failure to pay accrued property tax assessments, state valid claims of waste under the law of New York. Accordingly, the Order of the District Court dismissing Travelers' amended complaint is reversed insofar as the claims relate to waste occurring before the appointment of the receiver.
 
 
 54
 2. Travelers' Claims for Specific Performance
 
 
 55
 Travelers also appeals the District Court's dismissal of its claim for specific performance. Insofar as this claim relates to obligations of the Partnership that allegedly continued after the appointment of the Receiver, we have held that an equitable action for waste will not lie against a mortgagor out of possession. Similarly, an action for specific performance against a mortgagor out of possession, "although clad in the equitable raiment of specific performance, must be characterized as a claim for a money judgment." Travelers Ins. Co. v. 633 Third Assocs., et al., 816 F.Supp. at 207. Accordingly, we affirm the District Court's dismissal of that part of Travelers' claim for specific performance that relates to alleged obligations continuing after the appointment of the Receiver. Insofar as this claim relates to obligations of the Partnership before the appointment of the receiver, we have held that these obligations may be enforced through an equitable action for waste. Accordingly, we find it unnecessary to consider the District Court's dismissal of this aspect of Travelers' claim.
 
 
 56
 3. Travelers' Standing to Bring Fraudulent Conveyance Claims
 
 
 57
 It is undisputed that the Partnership was in possession of the Property at the time of Travelers' original complaint. Therefore, at the time of the filing of Travelers' original complaint, an action in equity for waste would have lain against the Partnership. As discussed above, the claims set forth in Travelers' amended complaint relate back to the original complaint. Because the partnership might have been enjoined from distributing cash reserves to the partners on the grounds that such a distribution would have prevented it from paying property taxes, the distribution injured Travelers. Therefore, Travelers has standing to challenge the distributions under New York fraudulent conveyance law insofar as Travelers' claims related to the portion of the distributions against which an equitable action for waste could have been brought. We reverse the District Court's order dismissing Travelers' claims of fraudulent conveyance insofar as they relate to the portion of the Partnership's cash assets against which Travelers could have brought an equitable action for waste. We affirm the District Court's order insofar as it dismisses Traveler's claims of fraudulent conveyance of assets against which Travelers could not have brought an action in equity for waste.
 
 III. CONCLUSION
 
 58
 The order of the District Court dismissing Travelers' amended complaint is affirmed insofar as Travelers' claims of waste and for specific performance relate to conduct occurring after the appointment of the Receiver. Insofar as Travelers' claims of waste relate to conduct occurring before the appointment of the Receiver, the District Court's order dismissing Travelers' amended complaint is reversed. The District Court's order dismissing Travelers' claims under New York fraudulent conveyance law is reversed insofar as those claims relate to a portion of the distributions against which Travelers could have brought an equitable action for waste.
 
 
 59
 Remanded for proceedings consistent with this opinion.
 
 MISHLER, Senior District Judge, dissenting:
 
 60
 I record my disagreement with the holding by the majority that under New York law, the willful[1] failure to pay property taxes and the failure to discharge the lien is a basis for a claim of waste by the mortgagee.
 
 
 61
 Travelers' claim (First Claim for Relief) states a claim of waste based on "the Partnership's failure to pay the installments of real estate taxes to the City of New York due January 1, 1992...."[2] The claim does not allege fraud in the failure to pay property taxes.
 
 
 62
 I agree with the majority's observation that New York law is unclear as to whether the failure to pay property taxes constitutes waste. The New York Court of Appeals has not spoken on the issue. The First Department of the Appellate Division of the New York State Supreme Court in Union Mortgage Co. v. Nelson, 275 A.D. 1028, 91 N.Y.S.2d 839 (1st Dep't 1949), affirming 82 N.Y.S.2d 268 (Sup.Ct.Bx.Cty.1948) decided the issue.
 
 
 63
 In Nelson, the junior mortgagee instituted an action for waste against the mortgagor, claiming that the mortgagor committed waste in failing to make payments due the senior mortgagee. The lower court held:
 
 
 64
 It is true that the failure of a life tenant to pay taxes has been held waste in so far [sic] as the remainderman is concerned. Stetson v. Day, 51 Me. 434. But a junior mortgagee is not a remainderman, and a mortgagor is not a life tenant. It is significant that despite the long history of the common law action in the nature of waste, there are no cases to be found holding a mortgagor liable in a case such as the instant one.
 
 
 65
 Id. at 270.
 
 The affirming opinion held:
 
 66
 The allegations sought to be added by the amended and supplemental complaint are factually nothing more than non-payment of the first mortgage interest and taxes. This is not waste in a legal sense. In the absence of showing fraud or some obligation on the part of the defendant owing to the plaintiff to make such payments, neither the proposed amended nor supplemental complaint make out a cause of action.
 
 
 67
 We are required to determine how the New York Court of Appeals would rule on the issue, if the issue were presented to it. Wilson v. Asten-Hill Mfg. Co., 791 F.2d 30, 32 (3d Cir.1986). In Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), the Court stated that "where the highest court of the state has not spoken on the point (citations omitted) ... this Court ... held that 'an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise' " (citing West v. American Tel. & Tel., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)).
 
 
 68
 This court in Leon's Bakery, Inc. v. Grinnell Corp., 990 F.2d 44, 48 (2d Cir.1993) noted that in determining how it believed the state's highest court would rule on the issue, "a federal court is free to consider all of the resources to which the highest court of the state could look, including decisions in other jurisdictions on the same or analogous issues."
 
 
 69
 Wisconsin denies a right of action by a mortgagee for waste based on the failure to pay property taxes. Chetek State Bank v. Barberg, 170 Wis.2d 516, 489 N.W.2d 385 (1992). California would deny such a right. Krone v. Goff, 53 Cal.App.3d 191, 127 Cal.Rptr. 390 (1975); but see Osuna v. Albertson, 134 Cal.App.3d 71, 78, 184 Cal.Rptr. 338, 342 (1982) ("Other authorities in California and elsewhere are in conflict, some holding that failure to pay taxes constitutes waste, and others holding that failure to pay taxes does not constitute waste.") (Footnotes omitted). New Jersey would also deny a claim of waste based on the failure to pay property taxes. Camden Trust Co. v. Handle, 132 N.J.Eq. 97, 26 A.2d 865 (1942).
 
 
 70
 States upholding an action by a mortgagee for waste for willful failure to pay property taxes, which become a prior lien, declare that the rental income during the period covered by the tax lien, after paying maintenance expenses, must be used to discharge the tax lien. Straus v. Wilsonian Inv. Co., 171 Wash. 359, 17 P.2d 883 (1933); Mutual Ben. Life Ins. Co. v. Canby Inv. Co., 190 Minn. 144, 251 N.W. 129 (1933).
 
 
 71
 We turn to the question of injury to Travelers by reason of defendant's refusal to pay the tax lien.
 
 
 72
 The Receiver appointed by order of the New York State Supreme Court dated January 27, 1992, in the foreclosure action, collected rents due during the period from January 1, 1992 to June 30, 1992. For reasons best known to the Receiver, she paid the property taxes due July 1, for the period to December 31, 1992, from the rents collected during January 1 to June 30.
 
 
 73
 The order appointing the Receiver authorized her to collect all rents and pay all real estate taxes and operating expenses "which are due or shall become due...." The loss of value to the property, which in turn impairs the mortgage, should be reduced to the extent that such rental income is available for the payment of taxes. The following are the rents collected for the four month period February to May: February, $656,252; March, $2,226,172; April, $1,444,471; May, $1,446,695. After paying operating costs for the period, "Ending Cash" as of May 31, 1992 was $5,259,624 (Letter dated June 18, 1992, from Sandhurst Associates, Ltd.).[3] The majority opinion notes that the Receiver's authorization to pay taxes "does not moot Travelers' claim of waste." It should, nevertheless, reduce the measure of damages to the extent that rental income for the period is available for payment of taxes.
 
 
 74
 Travelers' damages "would be limited to the amount of injury to the mortgage...." Van Pelt v. McGraw, 4 N.Y. 110 (1850); President and Directors of Manhattan Co. v. Mosler Safe Co., 246 A.D. 785, 284 N.Y.S. 145 (2d Dep't 1935).
 
 
 75
 The injury to Travelers' mortgage was due to the failure of the Receiver to apply the rental income properly. Chapman v. Chapman, 526 So.2d 131, 135 (Fla.3d Dist.Ct.App.1988) ("the remainderman is entitled to have a receiver appointed to collect the rents and apply them to discharge the tax indebtedness"); First National Bank of Neenah v. Clark & Lund Boat Co., 68 Wis.2d 738, 229 N.W.2d 221, 223 (A receiver may be appointed where rental income is in danger of being lost and "in a mortgage foreclosure action can only be justified for the purpose of preventing waste."); Mutual Benefit Life Ins. Co., 251 N.W. at 133 ("[W]hile the assigning or pledging of rents for the payment of taxes, insurance, and the saving of waste lawfully may be done, it must be clearly understood that the mortgagee will be allowed to collect only rent in an amount necessary to pay taxes then due or delinquent....")
 
 
 76
 I believe the New York Court of Appeals would deny a right of action to Travelers based on the failure of the mortgagor to pay the property taxes due January 1, 1992. I find that if New York law permitted such an action, the claim would be dismissed on the ground that the rental income, after payment of maintenance expenses, was available for the discharge of the tax lien and therefore the mortgage security was not diminished.
 
 
 77
 I dissent and vote to affirm the dismissal of the First Claim with leave to amend the claim for waste based on the failure to maintain the property in good condition and repair, and require a statement of facts upon which the claim is based.
 
 
 
 *
 The Honorable Jacob Mishler, Senior District Judge, Eastern District of New York, sitting by designation
 
 
 [1]
 Travelers joined as defendants the Partnership's sole general partner, Tower 41 Associates, and sole limited partner, Citibank, N.A., as Trustee of Citibank, N.A. Commingled Employee Benefit Trust
 
 
 [2]
 N.Y.Debt. & Cred.Law Secs. 270-81 (McKinney 1990). Section 274 declares a conveyance fraudulent as to creditors if "made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital." Section 275 similarly declares conveyances fraudulent where the conveying person "intends or believes that he will incur debts beyond his ability to pay as they mature." The New York act is a codification of the Uniform Fraudulent Conveyance Act
 
 
 [3]
 The panel included Oakes, Chief Judge, Walker, Circuit Judge, and Parker, Chief District Judge, United States District Court for the District of Vermont, sitting by designation
 
 
 [4]
 The non-recourse clause provided,
 Notwithstanding anything to the contrary contained in this Note or the Mortgage, the liability and obligation of the Exculpated Parties [defendants and Tower 41's partners] to perform and observe and make good the obligations contained in this Note and the Mortgage shall not be enforced by any action or proceeding wherein damages or any money judgment shall be sought against any of the Exculpated Parties, except a foreclosure action against the Mortgaged Property, but any judgment in any foreclosure action shall be enforceable against the Exculpated Parties only to the extent of Maker's interest in the Mortgaged Property and Payee, by accepting this Note and the Mortgage, waives any and all right to sue for, seek or demand any deficiency judgment against any of the Exculpated Parties in any such foreclosure action, under or by reason of or under or in connection with this Note or the Mortgage.
 Amended and Restated Note p 15.
 
 
 [5]
 Chief District Judge Parker wrote the opinion for a unanimous panel
 
 
 [6]
 The amended complaint included Joseph T. Comras, Stanley Stahl, and Robert Carmel amongst the named defendants as general partners of Tower 41
 
 
 [7]
 While the doctrine of waste developed to permit an action by an owner against a tenant, it was expanded to permit an action by a mortgagee against a mortgagor. See Aetna Life Ins. Co. v. Avalon Orchards, Inc., 118 A.D.2d 297, 505 N.Y.S.2d 216 (App.Div. 3d Dep't), appeal dismissed, 68 N.Y.2d 997, 510 N.Y.S.2d 1028, 503 N.E.2d 125 (1986); Emigrant Industrial Sav. Bank v. Midland Terrace Corp., 41 N.Y.S.2d 458 (N.Y.Sup.Ct. Westchester County 1942), affirmed, 266 A.D. 671, 41 N.Y.S.2d 567 (1943). Expansion to permit action by a mortgagee against a wasteful mortgagor is supported by the same rationale that originally supported the doctrine: it corrects incentives on the part of a mortgagor who anticipates default to deplete the collateral as much as possible before defaulting. Such an incentive leads to the inefficient use of property. Expansion of the doctrine of waste to mortgagor/mortgagee relationships removes this incentive
 
 
 [8]
 Nor will failure to pay principal and interest to a senior creditor create a cause of action on behalf of a junior creditor for waste. See Union Mortgage, 82 N.Y.S.2d at 270 (Sup.Ct. Bronx County 1948). This would allow a junior creditor to convert a non-recourse loan into a deficiency judgment and effectively give the junior creditor greater rights than a senior creditor. Id. at 270
 
 
 [9]
 The fact that the Receiver has been granted permission to pay taxes plus interest which accrued prior to the receivership, does not moot Travelers' claim of waste. Order of the Supreme Court of the State of New York, County of New York, (Santaella, J.), dated May 26, 1993, in Travelers Ins. Co. v. 633 Third Assocs., Index No. 1138/92. The Receiver proposed to pay the taxes and interest from rental income on the property which would have accrued to Travelers upon successful completion of foreclosure proceedings. Id. Since the value of property is dependent, in part, upon the stream of income it can generate, the fact that the taxes had to be paid from rental income suggests that the distribution of the Partnership's accumulated cash assets and the Partnership's subsequent failure to pay taxes decreased the value of the Property. In this case, mortgage impairment has led to a permanent decrease in the value of the property, akin to the physical injury suffered in a traditional action for waste. For this reason we disagree with Judge Mishler's dissenting suggestion that the amount of damages, if any are imposed, "should be reduced to the extent that ... rental income is available for the payment of taxes."
 
 
 [10]
 It is undisputed that a property tax assessment came due on January 1, 1992--before the appointment of a receiver
 
 
 [1]
 The mere failure by a mortgagor in possession to pay property taxes is willful since the mortgagor is chargeable with knowledge that taxes are due and constitute a prior lien
 
 
 [2]
 The claim also states the "failure to comply with various laws affecting the Property and to maintain the Property in good condition and repair" constitutes waste
 
 
 [3]
 Expenses charged against the rental income do not include monthly installments of principal and interest of $1,205,077 due under the mortgage