■ JOEL M. AURNOU, Respondent-Appellant, v LEON J. GREENSPAN et al., Appellants-Respondents, et al., Defendants. —Judgment of Supreme Court, Westchester County (Joseph DiFede, J.H.O), entered on or about July 28, 1988, which, after trial, awarded plaintiff $125,007, plus costs and disbursements, but without any interest, is unanimously modified to the extent of reducing the base amount thereof by $7,727 for contingency fees earned after plaintiff's withdrawal, as to which matters plaintiff did not establish he performed any work, $4,214 for the firm's library and $600 for mechanical errors, and awarding interest of 6% from January 1, 1978 until June 25, 1981, and 9% thereafter, on the reduced base amount of the judgment, and the judgment is otherwise affirmed, without costs or disbursements.

The White Plains law firm partnership of Greenspan & Aurnou was dissolved on April 29, 1977. The two principal parties' professional relationship had commenced 13 years earlier. In March 1977, one month before plaintiff departed, the Domain case (which was Greenspan's matter) was settled for $1.8 million. By its retainer, the firm was entitled to an hourly rate plus one third of amounts collected in excess of $1.2 million. At the same time, prior to plaintiff's withdrawal, the firm agreed to receive its $600,000 contingency fee at the rate of $50,000 per year over the next 12 years.

In the absence of any express agreement about the consequences of withdrawal of a partner, plaintiff is entitled to what he would have received upon dissolution and winding up of the partnership (Jackson v Hunt, Hill & Betts, 7 NY2d 180; Lewis v Vladeck, Elias, Vladeck, Zimny & Engelhard, 57 NY2d 975), including his 35% share of net proceeds earned but not yet collected "to be calculated on the usual basis as to overhead or any other legitimate charge against gross" (Dreier v Linden, 70 AD2d 820, 821). While the Court of Appeals has

affirmed reduction of accounts receivable by a firm's previously prevailing 56% overhead, it did so quite reluctantly on the basis of affirmed findings of fact *(Nishman v De Marco,* 94 AD2d 697, *affd* 62 NY2d 926). Thus, that case does not constitute authority vitiating the Judicial Hearing Officer's (JHO) determination of one third as a legitimate charge against the gross. That figure is, in fact, quite reasonable since plaintiff clearly contributed to the 54% overhead expenses while a member of the firm through April 1977. The one-third figure in reality relates more to the expenses in collecting amounts previously earned.

There is no basis to award a withdrawing partner a share of moneys earned after his withdrawal, where he has not participated in earning them by his actual services *(see, Goldberg v Wolman,* 59 AD2d 668). Thus, that part of the award based solely upon contingency fees earned after April 30, 1977, upon cases pending on that date, and without reference to services rendered, is erroneous. Plaintiff withdrawing-partner may be entitled to a quantum meruit recovery performed on such contingency fee cases prior to his withdrawal. Defendants maintain that he failed to establish the requisite facts for such recovery and, indeed, plaintiff's enumeration of 11 contingency fee cases largely confirms this. Plaintiff's list reveals that, in 10 of the 11 cases, the fee was earned after he left, and he does not claim to have done any work on those cases. In the last one, plaintiff tried the case and the fee was earned April 25, 1977, and the payment check was deposited by the firm three days after he withdrew; his share on that case is at most $634. With a one-third overhead reduction, it would appear to be $411. Thus, the $8,138 award based on contingency fees should be reduced to $411.

Bearing the above distinction between accounts receivable and contingency fees, the Domain fee should be treated as the former, as the firm's right to the fee was earned and fixed by an on-the-record settlement in March 1977, while plaintiff was still a partner, even though defendant Greenspan delayed completing the documents until July 1977 in an effort to defeat plaintiff's claim thereto *(see, Dwyer v Nicholson,* 89 AD2d 597). Indeed, defendants recognized this by paying plaintiff most of his share of this fee, and the balance included in the judgment merely reflects the Judicial Hearing Officer's proper rejection of defendants' 54% overhead calculation.

The JHO's refusal to award interest constituted an abuse of discretion under CPLR 5001. While such section makes an award of interest a matter of discretion in equity cases, here,

such an award was virtually mandated given that defendants were fiduciaries and failed to properly account to plaintiff for 11 years, during which time they enjoyed the benefit of plaintiff's money and plaintiff suffered the consequences of inflation. While the action was commenced six years after plaintiff's withdrawal as a member of the firm, there is no claim that he ever abandoned his right to an accounting and, as noted, at this late date the value of the approximately $125,000 is substantially diminished by inflation. Thus, plaintiff should be awarded interest from January 1, 1978 at 6% until June 25, 1981, and 9% thereafter, upon the award (see, CPLR 5001 [b]).

The JHO's $4,214 award for the library constitutes a double recovery to plaintiff with respect to that item, as its depreciated value was included in the award of plaintiff's capital account.

We note that the JHO made arithmetical errors of $600 to defendants' detriment, and the total should be adjusted accordingly.

We have examined the remaining contentions of plaintiff and defendants and find them to be without merit. Concur—Kupferman, J. P., Ross, Asch, Ellerin and Rubin, JJ. [See, — AD2d — (Aug. 9, 1990).]