[602 NYS2d 144]

DIANE DWYER, Respondent-Appellant, v MICHAEL NICHOLSON et al, Appellants-Respondents. CARMINE A. VENTIERA et al., Nonparty Respondents-Appellants.

Second Department, September 20, 1993

**APPEARANCES OF COUNSEL**

*Nathan R. Sobel,* Brooklyn, for appellants-respondents.

*Foley, Hickey, Gilbert & O'Reilly,* New York City *(Terry P. O'Reilly* on the brief), for respondent-appellant.

*Cahill & Cahill,* Brooklyn *(James H. Cahill* of counsel), for nonparty respondents-appellants.

### OPINION OF THE COURT

Per Curiam.

We conclude that the plaintiff's decedent, Peter Dwyer, and

the defendant Michael Nicholson agreed that, upon the dissolution of their partnership, the only items that would be subject to distribution would be "net income, cash and other deposits in partnership bank accounts, and accounts receivable". Because these parties agreed that the value of contingency fee cases and similar intangible firm assets would not be subject to distribution, we conclude that the Supreme Court erred in calculating the amount to be awarded to the plaintiff. For this reason, and also because the defendants were deprived of their right to a fair trial, we reverse the judgments appealed from, and grant the defendants a new trial.

## I

The plaintiff's decedent, Peter Dwyer, and the defendant, Michael Nicholson, practiced law together until Mr. Dwyer's death on December 3, 1978. In her complaint, the plaintiff alleged that, in August of 1978, Mr. Dwyer and Mr. Nicholson had formed a law partnership (hereinafter the Dwyer-Nicholson firm), and had agreed "that all income would be divided between the [two] partners, with the decedent receiving fifty-five (55%) percent and the defendant Michael Nicholson receiving forty-five (45%) per cent". These allegations were admitted in the defendants' answer.

In her complaint, the plaintiff sought, *inter alia,* a judgment "directing the defendants to pay to the plaintiff a sum of money equal to the value of the decedent's partnership interest as of the date of his death". In their answer, the defendants denied that the plaintiff was entitled to anything, claiming that Mr. Dwyer's 55% interest in the income generated by the Dwyer-Nicholson partnership during its brief four-month life-span was exceeded by amounts lawfully owed by Mr. Dwyer or the Dwyer-Nicholson firm to the defendant Michael Nicholson.

In their several affirmative defenses and counterclaims, the defendants asserted that the amount owed to Mr. Dwyer's estate was substantially exceeded by amounts owed by Mr. Dwyer's estate to Michael Nicholson. The defendants, in their affirmative defenses and counterclaims, made detailed allegations to the effect that Mr. Dwyer, acting in concert with another attorney, had negotiated forged checks in order to misappropriate funds rightfully belonging to clients of the Dwyer-Nicholson firm. The defendants alleged, *inter alia,* that they were legally responsible for reimbursing these clients for

the funds misappropriated by Mr. Dwyer, and that Mr. Dwyer's estate should therefore be responsible for reimbursing them. Based on these and other allegations, the defendants claimed that the plaintiff owed them actual damages in the sum of $87,187.68.

The Supreme Court, after a reference, awarded two judgments against one or more of the defendants and in favor of the plaintiff, including one judgment in the principal sum of $2,943,275 and another in the principal sum of $1,233,209.14. These judgments are based primarily on the Supreme Court's evaluation of certain contingency fee cases which were pending in the Dwyer-Nicholson firm on December 3, 1978.

## II

On appeal, the defendants seek reversal of these judgments by arguing that pending contingency fee cases are not assets subject to distribution in an action to dissolve a partnership. This argument is supported by a decision of the Appellate Division, First Department (see, Aurnou v Greenspan, 161 AD2d 438). However, we believe the better view is that enunciated by the Appellate Division, Third Department, in the more recent case of Kirsch v Leventhal (181 AD2d 222, 224-226). We agree with the Third Department and with the courts in other jurisdictions which have held that such cases do constitute partnership assets (see, Partnership Law § 4; Bader v Cox, 701 SW2d 677 [Tex]; Ellerby v Spiezer, 138 Ill App 3d 77, 485 NE2d 413; Resnick v Kaplan, 49 Md App 499, 434 A2d 582; Fox v Abrams, 163 Cal App 3d 610, 210 Cal Rptr 260; Balfour, Guthrie & Co. v Hansen, 227 Cal App 2d 173, 38 Cal Rptr 525; Jewel v Boxer, 156 Cal App 3d 171, 203 Cal Rptr 13; In re Estate of Barbera, 55 Ill 2d 235, 302 NE2d 302; Frates v Nichols, 167 So 2d 77 [Fla]).

■ Thus, the contingency fee cases pending in the Dwyer-Nicholson firm on the date of dissolution constituted partnership assets subject to distribution unless the partners in question had agreed otherwise. As an alternative argument for reversal, the defendants argue that, consistent with the practice of previous law firms of which Mr. Dwyer had been a member, Mr. Dwyer had in fact agreed with Mr. Nicholson that, upon dissolution of their partnership, only net income and accounts receivable would be distributed. We agree with this argument.

The only evidence of a written partnership agreement in

this case consists of three pieces of paper, upon which there appear 12 handwritten paragraphs, designated with the Roman numerals I to XII. This document is entitled "proposal for partnership". Paragraph I states: "Distribution of Net Income: PED 55%; MN, 45% * * * effective 7/1/78". Paragraph V governs the parties' rights and obligations in the event of dissolution. This paragraph states, "[u]pon dissolution of the partnership, the net income, cash and other deposits in partnership bank accounts, and accounts receivable shall be distributed at the distribution rates of the partners in effect at that time".

The evidence produced in the Supreme Court included certain other handwritten notes, and the evidence supports the conclusion that these were made by Mr. Dwyer. These notes include, on one line, the cryptic entry "45-55", without any elaboration. These notes also include a statement that certain paragraphs of the 12-paragraph "proposal" noted above, i.e., paragraphs VIII, IX, X, XI, and XII, were "no problem". The foregoing paragraphs of the proposal govern the management of the firm. These notes contain no similar written expression of assent by Mr. Dwyer to the terms of either paragraph I or paragraph V of the proposal.

On appeal, the defendants argue that pursuant to paragraph V of what they characterize as the "partnership agreement", Mr. Dwyer's estate is entitled to a percentage of the "net income and accounts receivable" of the short-lived Dwyer-Nicholson firm, and to nothing else. Such a construction of the "partnership agreement" would entitle the plaintiff estate to a relatively modest sum. Such a construction of the "agreement" would also be fully consistent with the partnership agreements which had governed Mr. Dwyer's relationships with previous partners.

In February of 1976, one former partner of Mr. Dwyer's had died, and upon the dissolution of the firm which occurred at that time, Mr. Dwyer had himself evaluated his ex-partner's interest at an amount which represents a tiny fraction of the sum now claimed by Mr. Dwyer's estate. In March of 1976, another former partner of Mr. Dwyer's had died and, upon the dissolution of this other previous partnership, Mr. Dwyer had evaluated his deceased ex-partner's interest in the firm as amounting to a similarly exiguous amount. This constitutes clear proof that Mr. Dwyer's past practice and that of his former partners was to facilitate the dissolution of their various partnerships by agreeing to distribute cash income

only, not intangible assets. This evidence of past practice is highly probative of the nature of Mr. Dwyer's relationship to Mr. Nicholson *(see, Union v Manley,* 1993 WL 20071 [Ohio Ct App, 10th Dist, Tyack, J.] [partnership's past practice relevant to evaluation of partner's interest]; *see also, Altman v Altman,* 653 F2d 755).

We also credit the testimony of the accountant employed by the Dwyer-Nicholson firm (who had also been employed by the prior firms). This witness testified, in essence, that he was instructed to keep the books of the Dwyer-Nicholson firm in the same way as that used in connection with the business of the previous firms. This witness's testimony supports the finding of fact that the 12-paragraph "proposal" noted above had become, even in the absence of express written assent by Mr. Dwyer to all its provisions, a binding partnership agreement.

The plaintiff cannot deny that paragraph V is part of the same document as paragraph I, *supra.* Yet the plaintiff argues, in effect, that only the terms of paragraph I should be given effect and that the terms of paragraph V should be disregarded. The plaintiff seeks to give effect to paragraph I by insisting that the 45%-55% breakdown contained in that paragraph governs not only the division of the income of the Dwyer-Nicholson firm, but also the manner in which that firm's *assets* would be divided upon dissolution. Yet at the same time, the plaintiff argues that paragraph V should not be given effect, because to do so would lead to the result that the value of the firm's intangible assets would not be subject to distribution at all.

The plaintiff also occasionally goes further and argues that pursuant to paragraph I, Mr. Nicholson was made an "income partner" only, and that Mr. Dwyer's estate should have received 100% of the assets of the Dwyer-Nicholson firm, including the value of the pending contingency cases. This argument, in addition to being meritless, is wholly self-destructive, because if Mr. Nicholson was an "income partner" only, that is, no more than an associate entitled to a percentage of profits in lieu of a salary, then Mr. Nicholson would have had no duty to account at all and Mr. Dwyer's estate would be entitled to no part of the value of uncompleted contingency fee cases *(see, Sargent v McLeod,* 209 NY 360; *Baxter v Billings,* 83 F 790; 7A CJS, Attorney & Client, § 292).

While seeking to exploit the unequal 55%-45% breakdown

provided for in paragraph I, *supra,* the plaintiff at the same time seeks to avert the impact of paragraph V, which, as noted above, provides for a division of profits and accounts receivable, but not for a division of the value of pending cases, in the event of a dissolution. In our view, the weight of the evidence, as well as simple logic, compels the conclusion either that *both* paragraph I *and* paragraph V are binding, or that *neither* paragraph I *nor* paragraph V is binding. As between these two alternatives, we conclude, based on our factual review of the record, that the weight of the evidence establishes that these two paragraphs represent the substance of the agreement between Mr. Dwyer and Mr. Nicholson. In accordance with paragraph V, the only items subject to distribution are (1) net income, (2) cash and other deposits, and (3) accounts receivable.

The plaintiff argues that this Court has already determined that paragraph V of the partnership agreement, *supra,* does not apply *(see, Dwyer v Nicholson,* 109 AD2d 862; *Dwyer v Nicholson,* 89 AD2d 597). However, neither one of these decisions construes or even mentions paragraph V. It is true that in both decisions the Court stated that "The decedent is entitled to share in the profits of all business pending on the date of the decedent's death." This statement was made, first in the context of a decision determining the plaintiff's rights to pretrial discovery *(see, Dwyer v Nicholson,* 89 AD2d 597, *supra)* and, second, in the context of a decision determining the validity of certain affirmative defenses *(see, Dwyer v Nicholson,* 109 AD2d 862, *supra).* In the earlier decisions, the Court was not called upon to interpret paragraph V of the agreement, nor to define whether the "profits" to which the decedent was entitled included the value of unsettled contingency cases, or whether instead, in accordance with paragraph V, the term "profits" includes only "net income, cash and other deposits in partnership bank accounts, and accounts receivable." In sum, the doctrine of the law of the case does not govern. For these reasons, we remit the case to the Supreme Court for a determination of the amount to which the plaintiff is entitled, in accordance with the terms of paragraph V of the partnership agreement.

### III

■ We conclude that a new hearing is warranted for an additional reason. We find that the defendants were deprived

of their right to a fundamentally fair hearing, both as to their counterclaims and as to their defenses, on account of misconduct by opposing counsel.

During the course of the proceedings, opposing counsel used terms such as "asshole", "dragon lady", "creature", "idiot", "rat" and "dog" with reference to one or more of the defendants, or to their counsel. The defendants or their counsel were repeatedly accused of perjury and theft. Unprofessional remarks such as "you are conducting yourself like a dog" and "he [is] delusional at this point", addressed to defense counsel, were unfortunately typical of the vile manner in which this action was tried. The remarks just cited do not constitute isolated incidents. It is not an exaggeration to say that sarcastic, rude, vulgar, pompous, and intemperate utterances appear on hundreds of pages of the transcript of this trial and most of them are attributable to the attorney for the plaintiff. More dismaying than counsel's unprofessional behavior is the failure of the presiding Referee to intervene appropriately. No judgment should be permitted to stand where it is made following a trial or hearing where the defendant was subjected to this sort of unprofessional and despicable conduct *(see, e.g., McAlister v Schwartz,* 105 AD2d 731, 733; *Sanchez v Manhattan & Bronx Surface Tr. Operating Auth.,* 170 AD2d 402; *Taormina v Goodman,* 63 AD2d 1018). "[T]he acts committed by [the plaintiff's attorney] were grossly disrespectful to the court and a violation of accepted and proper courtroom decorum. Such conduct is intolerable, for it destroys confidence in the fairness of judicial rulings and judgments and perverts the trial procedure as a serious search for the truth" *(Matter of Castellano,* 46 AD2d 792 [a public censure warranted for unprofessional remarks by counsel during trial]).

We have examined the parties' remaining contentions and find them to be without merit.

Accordingly, we reverse the amended judgment entered May 3, 1991 and the judgment entered December 18, 1991 insofar as these papers are appealed from. The appeal from the decision entered February 22, 1991 is dismissed, as no appeal lies from a decision. The cross appeal from the order entered February 22, 1991 is dismissed as abandoned. The appeal from the order dated December 12, 1991 is dismissed, because the right of direct appeal therefrom terminated with the entry of judgment in the action *(see, Matter of Aho,* 39 NY2d 241, 248). The order entered February 22, 1991 is

affirmed, insofar as appealed from, and the judgment entered December 18, 1991 is affirmed, insofar as cross-appealed from.

BRACKEN, J. P., MILLER, COPERTINO and SANTUCCI, JJ., concur.

Ordered that the appeal from the decision entered February 22, 1991 is dismissed, as no appeal lies from a decision; and it is further,

Ordered that the order entered February 22, 1991 is affirmed, insofar as appealed from; and it is further,

Ordered that the cross appeal from the order entered February 22, 1991 is dismissed as abandoned; and it is further,

Ordered that the amended judgment entered May 3, 1991 is reversed, insofar as appealed from, on the law and the facts; and it is further,

Ordered that the appeal from the order dated December 12, 1991 is dismissed; and it is further,

Ordered that the judgment entered December 18, 1991 is reversed, insofar as appealed from, on the law and the facts, and is affirmed, insofar as cross-appealed from; and it is further,

Ordered that the order dated December 12, 1991 is vacated; and it is further,

Ordered that the appellants-respondents are granted a new trial, in accordance herewith; and it is further,

Ordered that the appellants-respondents are awarded one bill of costs, payable by the plaintiff-respondent-appellant.