Frank G. SANTALUCIA, as Parent and Legal Guardian of Frank Santalucia, Jr., an infant, and as Administrator of the Estate of Pamela A. Santalucia, decedent Plaintiff,

Brian D. Premo, Esq., Appellee,

v.

SEBRIGHT TRANSPORTATION, INC., a Michigan Corporation, Sebright Products, Inc., a Michigan Corporation, Brent Sebright Company, a Michigan Corporation and Steven Lewis Whipple, Defendants,

Mackrell, Rowlands, Premo & Pierro, P.C., Appellant.

Docket No. 00–7228.

United States Court of Appeals, Second Circuit.

Argued: Sept. 27, 2000

Decided: Nov. 9, 2000

George F. Carpinello, Boies, Schiller & Flexner LLP, Albany, NY, for Appellant.

Elmer R. Keach, III, Albany, NY, for Appellee.

Before: McLAUGHLIN, CABRANES, and KATZMANN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Following the settlement of a wrongful death action for $1 million, plaintiff's counsel, Brian D. Premo, Esq. ("Premo") sought an order apportioning the contingent fee award between himself and his former law firm, MacKrell, Rowlands, Premo & Pierro, P.C. (the "Firm"). Prior to its dissolution, the Firm had been retained as counsel in the same action. The United States District Court for the Northern District of New York (Hurd, *J.*) awarded the dissolved law firm $19,407.50 as a *quantum meruit* recovery—that is, a reasonable hourly fee multiplied by the number of hours it had devoted to the wrongful death matter. The balance of the contingent fee, $310,464.47, was awarded to Premo. The Firm now appeals, arguing that the contingency fee was a firm asset.

We hold that the district court erred by not applying the New York rule that, absent an agreement to the contrary, a dissolving law firm is entitled to the value of the contingent fee at the time of dissolution. Accordingly, we vacate the order of the district court and remand for findings: (1) whether there was an agreement among the Firm's shareholders as to the disposition of pending contingency cases; and (2) if no such agreement existed, what the value of the contingent fee was when the Firm dissolved.

## BACKGROUND

In March 1997, Pamela Santalucia was killed when her automobile was rear-ended by a tractor trailer in Las Vegas, Nevada. Pamela was the mother of Frank James Santalucia ("Frank James") and former wife of Frank G. Santalucia ("Santalucia"). Santalucia was put in touch with the Firm in April 1997 regarding representation in a New York state court proceeding to determine the custody of Frank James, who was then an infant.

After meeting with Santalucia, the Firm agreed to represent him in connection with: (1) the custody proceeding; and (2) proceedings to have Santalucia appointed guardian of Frank James and administrator of the estate of Pamela Santalucia. The Firm agreed not to bill Santalucia for any of this work, anticipating that Santalucia would retain the Firm to prosecute a wrongful death action on a contingent fee basis. Through the efforts of the members of the Firm, Santalucia was appointed guardian of Frank James in October 1997, and was named administrator of Pamela Santalucia's estate in December 1997.

On January 16, 1998, Santalucia executed a retainer agreement with the Firm for representation in the wrongful death action. The Firm was named as counsel in the retainer agreement, although it was understood that Premo would be the lead lawyer in this action. Over the next year, Premo investigated the facts, researched applicable law, and otherwise provided representation in the wrongful death action.

One year later, on January 22, 1999, the shareholders agreed to dissolve the Firm and to cease operations as of February 15, 1999. It was agreed that each lawyer would retain his files and continue working on those matters for which he had been responsible. Thus, Premo was to continue representation in the wrongful death matter, while other members of the Firm were to continue representation in Santalucia's guardianship and estate matters. Beyond that, however, the precise terms of the dissolution are in dispute. The Firm claims that the shareholders had no agreement as to how pending contingency fees would be distributed upon collection. Premo, on the other hand, asserts that there was an oral agreement among the Firm's shareholders that each lawyer's cases, including contingency fee cases and profits derived therefrom, would remain the sole assets and profits of the respective attorneys.

Earlier, in September 1998, the other victims of the Las Vegas accident that killed Pamela Santalucia initiated a personal injury action against Sebright Transportation, Inc. ("Sebright") in the United States District Court for the District of Nevada. In this Nevada action, pre-trial matters were assigned to U.S. Magistrate Judge Lawrence R. Leavitt. On February 2, 1999, after the announcement of the Firm's dissolution, but prior to the cessation of operations, Magistrate Judge Leavitt invited Premo to attend a settlement conference with the parties in the Nevada action. Although Premo had not yet filed suit on behalf of the Santalucias, Sebright wanted him to attend the settlement conference in the hopes of achieving a global settlement with all of the accident's victims.

On February 15, 1999, as announced, the Firm ceased operations. After being notified by Premo, on or about February 12, that the firm would be dissolved, Santalu-

cia retained Premo, individually, on February 16, to represent him in the wrongful death action. Santalucia and Premo agreed that any fee due to the Firm would come out of Premo's contingency fee. On February 16, Santalucia and Premo memorialized their arrangement by signing a formal retainer agreement.

On March 5, Premo went to Nevada to attend Magistrate Judge Leavitt's settlement conference. At that conference, Sebright offered to settle Santalucia's claims for $1 million.

To avoid any statute of limitations difficulty, Premo filed the instant action in the United States District Court for the Northern District of New York (Hurd, *J.*) on March 16, 1999. The very next day, Santalucia accepted Sebright's settlement offer of $1 million. By the end of July of that year, the settlement agreement was confirmed in writing.

Premo thereafter filed an application in the Northern District for court approval of the settlement, as well as a determination of attorneys' fees due to him and to the Firm. On October 12, 1999, Judge Hurd approved the settlement agreement and, pursuant to Premo's retainer agreement with Santalucia, directed Sebright to distribute $329,871.97 of Santalucia's settlement proceeds to Premo.

In a subsequent decision dated February 8, 2000, Judge Hurd apportioned the $329,871.97 contingent fee between Premo and the Firm. *See Santalucia v. Sebright Transportation, Inc.,* No. 99–CV–391, 2000 WL 154727 (N.D.N.Y. Feb.8, 2000). Judge Hurd based his decision principally upon the language of the original retainer agreement that Santalucia had signed with the Firm in January 1998. That agreement made the following provision in the case of termination of the representation:

> The attorneys shall be entitled to payment of their full contingent share of any settlement of or judgment on the claim(s) or action(s) for prosecution or adjustment of which they are retained, if

wrongfully discharged by client, or the *quantum meruit* value of their services rendered if they are otherwise discharged, substituted or withdraw from representation before such settlement or judgment is obtained.

*Id.* at *1.

The Firm never claimed that Santalucia had wrongfully discharged it from the representation. Therefore, having concluded that, by its dissolution, the Firm's representation of Santalucia had been terminated, the district court held that the Firm was entitled only to a *quantum meruit* recovery. The district court then calculated the reasonable value of the legal services rendered by the Firm from its retention in January 1998 until its dissolution on February 16, 1999 to be $19,407.50, (110.9 hours at $175.00 per hour). Thus, the district court directed Premo to remit $19,407.50 to the Firm, and to keep the remaining $310,464.47. *See id.* at *5–6. The Firm now appeals.

## DISCUSSION

■ The district court had diversity jurisdiction over Frank James's underlying wrongful death claim pursuant to 28 U.S.C. § 1332. New York law requires court approval of attorney's fees when the client is an infant. *See* N.Y. Jud. Law § 474 (McKinney 1983). The district court, at Premo's request, then assumed ancillary jurisdiction over this fee dispute between Premo and the Firm. *C.f. Chesley v. Union Carbide Corp.,* 927 F.2d 60, 64 (2d Cir.1991) ("It is well settled that [a] federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes ... between litigants and their attorneys when the dispute relates to the main action ...." (citations and internal quotation marks omitted)). The parties' briefs assume that New York law controls this dispute, and such "implied consent ... is sufficient to establish choice of law." *Tehran–Berkeley Civil & Environmental Engineers v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989).

■ We review the district court's interpretation and application of state law *de novo. See Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir.1999). In so doing, we of course look to the state's decisional law, as well as to its constitution and statutes. *See id.* (citing *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir.1994)). Where New York law is unsettled, this Court is obligated to "carefully ... predict how the state's highest court would resolve the uncertainty or ambiguity." *Id.* (internal quotation marks and citation omitted). In making this prediction, we give the "fullest weight" to pronouncements of the state's highest court, while giving "proper regard" to relevant rulings of the state's lower courts. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d at 119. "We may also consider 'decisions in other jurisdictions on the same or analogous issues.'" *Maska U.S.*, 198 F.3d at 78 (quoting *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir.1993)).

### A. Relevance of the Firm's retainer agreement

When apportioning the contingent fee in this case, the district court relied primarily upon the terms of the retainer agreement that Santalucia had originally entered into with the Firm in January 1998. The district court concluded that the attorney-client relationship between the Firm and Santalucia had been terminated by: (1) the Firm's February 1999 dissolution; and (2) Santalucia's execution of a new retainer agreement with Premo. Therefore, the district court reasoned that, under the terms of the original retainer agreement, the Firm was entitled to collect only a *quantum meruit* fee from Santalucia. This analysis was incorrect.

■ The district court's reliance upon the original retainer agreement between Santalucia and the Firm was misplaced. This case is not about *Santalucia's* obli-gations to the Firm; the Firm seeks no recovery from Santalucia. This case concerns *Premo's* obligations to the Firm.

The Firm argues that Premo has a fiduciary duty to account to the Firm for the fee collected in the Santalucia wrongful death action. The terms of *Santalucia's* retainer agreement with the Firm do not, in any way, alter the scope or duration of the fiduciary duty *Premo* owes to the Firm. Thus, the original retainer agreement between Santalucia and the Firm simply is not relevant to this inquiry.[1] *To resolve this dispute, we look to New York law regarding the fiduciary duty owed by lawyers to their former firms.*

### B. Premo's fiduciary duty to account to his former firm

■ It is beyond cavil in New York that a member of a law firm owes a fiduciary duty to the other members of the firm. *See Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 629 N.Y.S.2d 1009, 1012, 653 N.E.2d 1179 (1995) ("law partners, no less than any other business or professional partners, are bound by a fiduciary duty requiring 'the punctilio of an honor the most sensitive'" (quoting *Meinhard v. Salmon*, 249 N.Y. 458, 463, 164 N.E. 545 (1928))); *Gibbs v. Breed, Abbott & Morgan*, 271 A.D.2d 180, 710 N.Y.S.2d 578, 581 (1st Dep't 2000).

To date, the New York Court of Appeals has not addressed the more specific issue of when and to what extent a lawyer has a fiduciary duty to account to a dissolved firm for the contingent fee cases that he took with him. However, New York's Appellate Division has confronted the problem on several occasions. Those cases now uniformly hold that, "absent an agreement to the contrary, pending contingent fee cases of a dissolved partnership are assets subject to distribution." *Shandell v. Katz*, 217 A.D.2d 472, 629 N.Y.S.2d 437,

---

1. Because we conclude that the original retainer agreement is of no relevance in this dispute, we need not address the argument raised by the Firm that its dissolution did not amount to a withdrawal from its representation of Santalucia.

439 (1st Dep't 1995); *see also Grant v. Heit,* 263 A.D.2d 388, 693 N.Y.S.2d 564, 565 (1st Dep't 1999); *DelCasino v. Koeppel,* 207 A.D.2d 374, 615 N.Y.S.2d 454, 455 (2d Dep't 1994); *Dwyer v. Nicholson,* 193 A.D.2d 70, 602 N.Y.S.2d 144, 146 (2d Dep't 1993) (*per curiam* ); *Kirsch v. Leventhal,* 181 A.D.2d 222, 586 N.Y.S.2d 330, 332 (3d Dep't 1992).

In *Shandell,* for example, the plaintiff had voluntarily withdrawn from a law partnership, taking with him 14 contingent fee cases, and eventually recovering $1.6 million. *See Shandell,* 629 N.Y.S.2d at 438. The successor partnership kept 289 cases and recovered $9.6 million. *See id.* The parties quarreled over the extent to which each was to share in the contingent fees collected after the original partnership dissolved. *See id.* The court flatly rejected a *quantum meruit* rule that a lawyer could share in contingent fees collected after dissolution only to the extent that he had participated in earning the fee by actual services. *See id.* at 438 (limiting *Aurnou v. Greenspan,* 161 A.D.2d 438, 555 N.Y.S.2d 356 (1st Dep't 1990)). Rather, the court concluded that the sounder rule was that pending contingent fees are firm assets except when the partnership has agreed on an alternative method of distribution. *See id.* at 439.

■ This does not imply, however, that the full settlement value of a contingent fee will always go to the dissolved firm. The *Shandell* court carefully added the important proviso that, to the extent that the "successful settlement of a pending contingent fee case post-dissolution is due to a surviving partner's 'postdissolution efforts, skill and diligence,' " the dissolved

firm had no cognizable property interest in the fee. *Id.* at 439 (quoting *Kirsch v. Leventhal,* 586 N.Y.S.2d at 333). Thus, in a case where a lawyer departs from a dissolved partnership and takes with him a contingent fee case which he then litigates to settlement, the dissolved firm is entitled only to the value of the case at the date of dissolution, with interest. *See Kirsch,* 586 N.Y.S.2d at 333 (citing N.Y. Partnership Law § 73). Stated conversely, the lawyer must remit to his former firm the settlement value, less that amount attributable to the lawyer's efforts after the firm's dissolution.

■ To arrive at this value, a court must "evaluate the efforts undertaken by the former law firm prior to the dissolution date, or any other relevant evidence to form a conclusion as to the value of these cases to the law firm on the dissolution date." *Grant,* 693 N.Y.S.2d at 565. The portion of the fee collected by the law firm would then be distributed to the members in accordance with their *pro rata* interest in the firm.

\*　　　\*　　　\*

Under the line of cases emanating from *Kirsch* and *Shandell,* it is clear that Premo, as a former member of the Firm, had a duty to turn over to the Firm the value of the contingent fee case at the date of dissolution.[2] *Premo, however, raises two arguments to blunt the force of those cases.*

## 1. *Application of Shandell to professional corporations*

■ Premo maintains that the *Shandell* rule is limited to partnerships and therefore does not apply to professional corporations like the Firm. The district court

**2.** Because we decide this case on the basis of the rule set out in *Shandell,* we need not address the Firm's alternative argument that, as an attorney discharged without cause, it may elect to receive from the successor counsel either a *quantum meruit* recovery, or a "contingent percentage fee based on his or her proportionate share of the work performed on the whole case." *Cohen v. Grainger, Tesoriero & Bell,* 81 N.Y.2d 655, 602

N.Y.S.2d 788, 790, 622 N.E.2d 288 (1993) (internal citations omitted). The *Cohen* rule allows an attorney discharged without cause to recover from any successor counsel, whether or not the successor counsel has a fiduciary duty to the original attorney. In this case, however, applicability of the *Cohen* rule would depend on whether the Firm could fairly be characterized as having been discharged without cause.

accepted this argument primarily because the *Shandell* court based its conclusions, at least in part, on N.Y. Partnership Law § 73.[3] *The district court concluded the Partnership Law was inapplicable because the Firm was organized as a professional corporation, and thus was subject only to the N.Y. Business Corporations Law. Premo, arguing that "no New York Court has directly addressed the issue," urges us to reach the same conclusion. We do not agree.*

First, Premo's protestations notwithstanding, this issue has indeed been squarely addressed by New York's Appellate Division. In *DelCasino*, the court extended the *Shandell* rule from law partnerships to encompass a professional corporation of attorneys. The court held that, because the shareholders' agreement did not address distribution of assets upon dissolution, the shareholders were entitled to recover their share of fees that the corporation earned from pending contingent fee cases. *See DelCasino*, 615 N.Y.S.2d at 455.

Second, the majority of states to confront this issue have extended the familiar fiduciary duty principles of partnerships to professional corporations. *See, e.g., Sufrin v. Hoiser*, 896 F.Supp. 766, 768–69 (N.D.Ill.1995); *Hurwitz v. Padden*, 581 N.W.2d 359, 362 (Minn.Ct.App.1998); *Fox v. Abrams*, 163 Cal.App.3d 610, 616–17, 210 Cal.Rptr. 260 (Cal.App.1985). Premo urges us to adopt the reasoning of a Maryland case, *Langhoff v. Marr*, 81 Md.App. 438, 568 A.2d 844, 855 (Md. Ct. Special App.1990), *vacated*, 322 Md. 657, 589 A.2d 470 (Md.1991), which held that dispossessed shareholders of a law firm have no fiduciary duty to their former corporation. However, it is not clear that Maryland has

adopted the position advocated by Premo given that, in reversing the intermediate appellate court's decision, the Maryland Court of Appeals stated that is was "unnecessary in this case to decide whether a partnership or corporate model applies" because a "special arrangement" between the parties "extinguished any continuing duty if loyalty." *Id.* at 474.

■ Given all this, we believe that the New York Court of Appeals would more likely follow the reasoning of *DelCasino* and the majority of states. *See Maska U.S.*, 198 F.3d at 78. Following the intermediate appellate court's decision in *Langhoff* would essentially create a special category of attorneys in New York—those who organize themselves in professional corporations rather than partnerships—who would not owe any fiduciary duties to their former firms. We can find no justification to support the bifurcation of the New York legal profession in this manner, particularly when it is recalled that when attorneys were permitted to incorporate, it was with the clear understanding that their professional and ethical obligations were to remain undiminished. *See Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.*, 710 F.2d 87, 89 (2d Cir.1983) ("ethical and professional obligations which individual shareholders of professional corporations owe their clients preclude the grant to them of all the benefits of incorporation"); *c.f. Udel v. Udel*, 82 Misc.2d 882, 370 N.Y.S.2d 426, 428 (Civ.Ct.1975) ("The law provides economic advantages but at the same time continues to safeguard the traditional concept of individual responsibility of the professional to his patient or client and inferentially continues state regulation of professional conduct.").

---

**3.** N.Y. Partnership Law § 73 states, in relevant part:

When any partner retires or dies, and the business is continued ... unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as

an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership....

Third, while N.Y. Partnership Law § 73 does indeed support the holding of *Shandell*, it is not necessary to that holding. A close reading of *Shandell* and § 73 reveals that § 73 only provides a *methodology* for the accounting of a dissolved partnership. Section 73 is not the *source* of the duty of a lawyer to account to his former partners. The source of the duty is the fiduciary relationship of trust and confidence that partners have from time immemorial shared with one another.

### 2. Factual findings of the district court

■ Premo also argues that, even if *Shandell* applies, the district court made factual findings that: (1) the shareholders of the Firm had a dissolution agreement whereby each lawyer would retain his own cases for his exclusive benefit; and (2) the value of the Santalucia case at the time of the Firm's dissolution happened to be equal to the *quantum meruit* award. If he were correct, and the district court did make both findings, the benefits to Premo's case would be great, for we set aside a district court's findings of fact only when they are clearly erroneous. *See Metzen v. United States*, 19 F.3d 795, 797 (2d Cir. 1994). Unfortunately for Premo, however, the district court made no such factual findings.

■ To support his contention that the district court made a factual finding that the shareholders of the Firm agreed that each lawyer would litigate his cases for his own exclusive benefit, Premo cites a portion of the district court's opinion which states:

Interestingly, the Firm avers that the intent at dissolution was for each member to take the remaining contingency fee cases, bring them to conclusion, then distribute the contingency fees in accordance with the Firm's agreement, as part of the winding up process. However, the Firm made no mention of any other case in which a fee was distributed in this manner. Lack of any such information dispels the accuracy of the

Firm's averment as to the members' intent.

*Santalucia*, 2000 WL 154727, at *4.

While it is clear that the district court did not credit the Firm's version of events, this statement cannot reasonably be construed as an affirmative finding of fact that an agreement existed to the contrary.

Premo also maintains that the district court made a factual finding that the settlement was due almost entirely to Premo's post-dissolution efforts, and that finding was reflected in the district court's apportionment of the contingent fee. In its decision, the district court wrote:

Even accepting, *arguendo*, the Firm's contention that plaintiff's wrongful death action is a firm asset, a *quantum merit* [sic] valuation would not be unreasonable. If, as the Firm suggests, the rule of *Kirsch v. Leventhal* applied, the value of the partnership's interest would be determined as of the date of dissolution. The Firm would not be entitled to the full contingent fee. To the extent the successful resolution of the case was attributable to Premo's postdissolution efforts, skill and diligence, the value of the Firm's members' interest proportionately would not be "attributable to the use of [the members'] right in the property of the dissolved [firm]."

*Santalucia*, 2000 WL 154727, at *4 (internal citations omitted).

Again, while it appears from this language that the district court believed Premo deserved the bulk of the contingent fee, it cannot be seriously maintained that the court's ruminations amount to a factual finding of the value of Santalucia's case on the date of dissolution.

## CONCLUSION

We have considered the parties remaining contentions and find them without merit. We hold, therefore, that under New York law, when a professional corporation of lawyers dissolves and a lawyer

leaves with a contingent fee case, absent an agreement to the contrary, that case remains a firm asset. When the case is concluded and the contingent fee is collected, the lawyer is obligated to remit to his former firm the value of the contingent fee case measured as of the time the firm dissolved.

Accordingly, we VACATE the order of the district court apportioning the Santalucia contingent fee between Premo and the Firm and REMAND for: (1) a factual finding whether the shareholders of the Firm had an agreement as to how fees from pending contingent fee cases would be distributed; (2) if no such agreement existed, a factual finding as to the value of the Santalucia wrongful death action at the time of the Firm's dissolution; and (3) further proceedings not inconsistent with this opinion.